**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Tyrone STEWARD, Defendant-Appellant.**

**No. 39330.**

Missouri Court of Appeals,
St. Louis District,
Division One.

March 21, 1978.

Robert C. Babione, Public Defender, Joseph W. Webb, Asst. Public Defender, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, J. Michael Davis, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Richard L. Poehling, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PER CURIAM.

This is an appeal by defendant-appellant, Tyrone Steward, from a judgment of conviction for the offense of burglary in the second degree. §§ 560.045, 560.095, RSMo. Defendant was found guilty by the jury and sentenced by the court under the provisions of the Second Offender Act, § 556.280, to ten years in the Department of Corrections. For reasons hereinafter stated, we affirm.

The thrust of the evidence at trial was the following. On August 16, 1976, Mr. Harold Winkelman, who resided at 4233 Grove Street in the City of St. Louis, left his home "for breakfast" at about 8:00 a. m. He returned about 9:00 a. m. and

> ". . . saw some things was disturbed in the yard. The gate was open, window had been forced, and I looked around the house, I saw a window open so I went down the street and called the police on the phone."

The window had been "secured" [1] when he left the house that morning. A board lay on the window sill. Two officers came to

---

1. Although the evidence is not crystal clear, Mr. Winkelman was referring to a window "to a hallway in my house." He later referred to it as the "bathroom window." Mr. Winkelman testified that he had driven nails in it and the inside nails were forced out. He testified to two cellar doors—an outer door described as a "rain protector" was open "[t]hat should not have been open" and an inner door which was closed. One of the officers, however, testified that the "[b]asement door, steps leading down to the basement" was open.

the home. According to the testimony of Mr. Winkelman, when the officers arrived he opened the front door and while he remained outside the officers went in. Inside the officers found the appellant in the coal bin in the basement. He was arrested and searched. In his trousers were two unemployment checks belonging to Mr. Winkelman. The house was in disarray; Mr. Winkelman saw "an array of everything out on my bed."

The two officers testified. Their testimony brought out that when they arrived the door of the residence "was standing open" and they entered the residence with Mr. Winkelman and "searched the residence for any persons who may have been inside." They found the defendant "[i]n the basement in a coal bin" and took him upstairs. One of the officers found "in his right-rear-trouser pocket two checks belonging to the victim." An officer testified: "We received an assignment . . . . Upon entering the building—the door was open,[2] the window was broken out." "The glass was broken and the window was open."[3] "There was glass in the gangway." "We searched the first-floor premises, found no one. Then we searched the basement premises and in a back closet room we apprehended a subject." "The residence was ransacked."

The defendant did not testify.

During his closing argument, the defense attorney compared the legal principles in this country with those of other countries and stated that the jury would be required to find the defendant guilty beyond a reasonable doubt. He argued that there was no evidence of a "breaking"—a necessary element of the offense. He concluded his argument by informing the jury that

". . . to Tyrone Steward this is the important, important, day of his life and I'm convinced that when you look at this case, look at the evidence, . . . you're going to find Tyrone Steward not guilty because the State hasn't proved those elements beyond a reasonable doubt."

2. It was "[w]ide enough for us just to walk through without touching."

In the second portion of the state's argument, the prosecutor began:

". . . [T]his is an important day in Tyrone Steward's life because he's sitting there looking at the twelve people of you saying, 'Am I going to be able to beat this case?' 'Am I going on the bricks?' 'Am I going to walk the streets again?' 'Am I going to get to look at another house?' "

This was objected to; the prosecutor withdrew the statement and the court instructed the jury to disregard it.

Later, in commenting upon the defense counsel's argument, the prosecutor stated:

"[Defense Counsel] talked with you about the founding fathers of our country. I'd like to expand on this. . . .

. . . . .

One of the things that you as citizens have to remember is that the Constitution is made for everybody, not just for people like Tyrone Steward who can come in and say, 'I got caught. Now you give me my constitutional rights.' Mr. Winkelman—"

An objection was made and overruled. The prosecutor continued:

"Mr. Winkelman has some rights too. He has the same rights that you enjoy when you go to your house—to leave your house without having fear that somebody is going to break in and take your property. Those are your constitutional rights, to protect your property.

. . . . .

Now, you have to go up to the jury room and decide what you're going to do when you get evidence like this, . . . where the officers catch the man breaking into a house that had been secured an hour before."

An objection was made to this latter statement and overruled.

Finally, near the end of his closing argument, the prosecutor argued:

3. The officer testified that there were two windows—about nine feet apart. They both had broken glass.

"You have to let your community and Mr. Steward himself know what you think when you hear a case with evidence like this, what you think your community demands, you as a citizen demand. When you ask for your demand of justice, why don't people do something about what is going on out there it comes down to twelve citizens like yourself in every case sitting as a jury weighing the evidence and saying, when we get evidence like this, strong evidence, . . . we're going to tell him, Mr. Tyrone Steward and everyone like him, that when you do that you're going to have to be prepared to pay for your actions and when you're caught like that, . . . the evidence in this case shows the citizens of the community are not going to tolerate it, you're going to be found guilty as charged, as in fact the evidence shows you to be beyond a reasonable doubt . . . ."

On this appeal appellant contends (1) that the evidence was insufficient to support a conviction of burglary in the second degree because there was no direct evidence of a "breaking" since the evidence showed a number of open entry points existed and because the facts and circumstances did not point so clearly to guilt as to exclude every reasonable hypothesis of innocence since there was some evidence of open doors and windows, and (2) that the trial court erred in overruling objections to the prosecutor's argument which referred to the community and the jury, and to those comments which communicated a presumption of appellant's guilt—"to beat this case," "to get to look at another house" and "I got caught."

We find neither point to be meritorious.

■ The thrust of appellant's first point is that, since the evidence showed a variety of possible open entry points, there was no "breaking" so as to constitute the offense of burglary. Although there was some contradictory testimony in the state's case as to whether the front door or cellar door or a

certain window was open, there was substantial evidence that the house had been secured when Mr. Winkelman left the house. And when he returned one or more of the windows had been broken, a board lay on the sill, there was glass in the gangway, the defendant was found inside the residence, the house was in disarray or "ransacked" and the defendant was found to have two checks on his person which belonged to the victim. Taking the evidence and all reasonable inferences derived therefrom in the light most favorable to the state, we conclude that there was sufficient evidence to indicate a "breaking" and entering with the intent to steal. The contradictory testimony that there may have been possible open entry points does not preclude the jury from finding upon the testimony of Mr. Winkelman that there was a breaking and entering. Mr. Winkelman testified that a window had been forced and that before he left it was secured.

Although there were no eyewitnesses to the actual "breaking," the facts and circumstances were such so as to point so clearly to guilt as to exclude every *reasonable* hypothesis of innocence. *See State v. Cox,* 527 S.W.2d 448, 452 (Mo.App.1975); *State v. Mason,* 506 S.W.2d 458, 460 (Mo.App.1974); *State v. Sanderson,* 528 S.W.2d 527, 531 (Mo.App.1975); *State v. Brunson,* 516 S.W.2d 799, 803 (Mo.App.1974).

We have examined the authorities[4] relied upon by the appellant and find that they are not controlling or dispositive of this cause.

As to appellant's second point, the only portion of the argument of the prosecutor which was properly preserved in the motion for new trial was the comments concerning the effects that the jury's verdict would have on the local community. We find no error as to those comments.

■ It is true, of course, that an accused is entitled to a fair trial and it is the duty of the prosecutor to see that he gets

4. *State v. Allen,* 344 Mo. 335, 126 S.W.2d 236 (1939)—absolutely no evidence that the doors and windows had been secured or closed;

*State v. Kennedy,* 16 Mo.App. 287 (1884)—evidence that window was open.

one. As long as the prosecutor stays within the record and its reasonable inferences, his argument is legitimate. *State v. Laster*, 365 Mo. 1076, 293 S.W.2d 300, 306 (banc 1956). But the trial court has wide discretion in determining the latitude in permitting argument of counsel, and an appellate court will not reverse unless there has been an abuse of discretion. *State v. Taylor*, 508 S.W.2d 506, 514 (Mo.App.1974); *State v. Tiedt*, 360 Mo. 594, 229 S.W.2d 582, 588 (banc 1950); *State v. Rutledge*, 524 S.W.2d 449, 458 (Mo.App.1975); *State v. Tallie*, 380 S.W.2d 425, 430–431 (Mo.1964). An argument may convey to the jury the necessity of law enforcement as a deterrent to crime, the evil results which flow to society from any failure of the jury to do its duty, the responsibility of the jury in the suppression of crime and may call for law enforcement. *See State v. Heinrich*, 492 S.W.2d 109, 114 (Mo.App.1973). The prosecutor may not, however, seek by inflammatory appeals to arouse in the jurors personal hostility toward or personal fear of the defendant. He may not personally abuse the defendant with remarks unconnected with the evidence. *See State v. Jackson*, 499 S.W.2d 467, 471 (Mo.1973).

■ As to the argument concerning the jury and the local community, we find that the trial court did not err in overruling an objection thereto. An argument closely paralleling this one was approved in *State v. Crawford*, 478 S.W.2d 314, 320 (Mo.1972), *reh. den.* 409 U.S. 1051, 93 S.Ct. 536, 34 L.Ed.2d 505,[5] where the Supreme Court found the argument "a permissible call for law enforcement." We believe that the argument here was a legitimate call for law enforcement and emphasized the duty of

the jury as to its responsibility for the suppression of crime.

■ As to the other portions of the argument complained of on this appeal, they were not properly preserved in the motion for new trial and were not properly preserved for review. *State v. Nevills*, 530 S.W.2d 52, 54 (Mo.App.1975). Even so, those portions of the argument were either (1) within the record or the permissible inferences therefrom or (2) showed no gross personal hostility toward the defendant or (3) were not such as to arouse the passions or inflame the jury as found in other decisions.[6] *See* cases summarized in *Jackson*, 499 S.W.2d at 471. Nor did they rise to the level of persistence as the remarks in *Heinrich*. The reference to "I got caught" did not rise to the level of opprobrious personal reference to the defendant's character; the remark about "breaking into a house" was well within the record; and the remark concerning "walk the streets again" was not so prejudicial under the circumstances so as to require a reversal. These remarks certainly do not rise to the level of "plain error." Rule 27.20(c).

We have read the entire record, the briefs of the parties and the authorities relied upon therein. We are convinced that there is no prejudicial error.

The judgment is affirmed.

All the Judges concur.

---

**5.** " 'A society, a community only gets the type of law enforcement that it wants and you gentlemen are the Society. You are going to decide in this case whether this community wants this type of conduct going on and whether you want this type of man to be walking the streets and—.' "

**6.** *See State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 527–528 (banc 1947); *State v. Taylor*, 320 Mo. 417, 8 S.W.2d 29, 36–37 (1928)—"moral pervert" and voices in audience: "Take him out;" *State v. Zorn*, 202 Mo. 12, 100 S.W. 591, 600 (1907)—not properly preserved; *State v. Clancy*, 225 Mo. 654, 125 S.W. 458, 459 (1910) —"police character;" *State v. James*, 216 Mo. 394, 115 S.W. 994, 998 (1909)—comment on failure to testify; *State v. Allen*, 363 Mo. 467, 251 S.W.2d 659, 662 (1952)—improper evidence; *State v. Malone*, 301 S.W.2d 750, 760 (Mo.1957)—"confessed convict" not improper under facts. *See also State v. Poole*, 556 S.W.2d 493, 495 (Mo.App.1977) (collecting cases of epithets held not prejudicial); *State v. Mayfield*, 562 S.W.2d 404 (Mo.App.1978).