STATE of Missouri, Plaintiff/Respondent,

v.

Jerry PLUMMER, Defendant/Appellant.

Jerry PLUMMER, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60749 and 62194.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 13, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 26, 1993.

Susan Eckles, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury found Jerry Plummer guilty of distributing a controlled substance (marijuana) within one thousand feet of a school in violation of § 195.214 RSMo (Cum.Supp.1989). The trial court found Plummer to be a prior and persistent offender and sentenced him to a term of twenty-five years imprisonment. Plummer filed a Rule 29.15 motion for post-conviction relief which the motion court denied after an evidentiary hearing.

Plummer appeals both the judgment of the trial court and the order of the motion court. On direct appeal Plummer contends the trial court erred in admitting a transcript of a tape recording that identified the drug seller on the recording by Plummer's name, erred in overruling his *Batson* motion, erred in failing to strike a venireperson for cause, plainly erred in failing to *sua sponte* declare a mistrial as a result of an argument made by the prosecutor during the rebuttal portion

of her closing argument, plainly erred in failing to "challenge" the constitutionality of § 195.214, and erred in overruling his motion to quash the indictment or stay the proceedings based on the composition of grand and petit juries in St. Louis.

On appeal from the order of the motion court Plummer contends that the motion court clearly erred in denying his Rule 29.15 motion in which he alleged he was denied effective assistance of counsel because his trial counsel failed to object to the introduction of a photograph showing a "Warning Drug Free Zone" sign in front of a school. He further contends that the motion court erred in failing to issue findings of fact and conclusions of law on his motion to produce a tape recording and that his post-conviction counsel abandoned him by not proving that Plummer's voice was not on the tape recording used at trial. We affirm both the judgment of the trial court and the order of the motion court.

## I. DIRECT APPEAL

The sufficiency of the evidence is not in dispute. The evidence, viewed in the light most favorable to the verdict, reveals that at 12:30 p.m. on November 16, 1990 a St. Louis Police Department Street Corner Apprehension Team (SCAT team) conducted an undercover "buy-bust" drug operation in the area of Blair and East Desoto in St. Louis. Detective Rodney Brunson of the St. Louis Police Department was the designated undercover officer. Detective Brunson was wearing a Kel transmitter/tape recorder which enabled a second SCAT team member, Detective Michael Priest, to monitor his activity from a surveillance van.

Detective Brunson heard a whistle as he was driving an unmarked police vehicle slowly down the 1400 block of East Desoto. He looked in his rear view mirror and saw a man sitting on the porch of a residence on East Desoto. Detective Brunson made a U-turn and stopped his vehicle in front of the residence. The man motioned for Detective Brunson to exit his vehicle. Detective Brunson met the man by the porch. The man offered to sell Detective Brunson cocaine or crack. Detective Brunson told the man that

he wanted to buy some marijuana. The man handed Detective Brunson two bags containing marijuana and Detective Brunson handed the man a twenty dollar bill whose serial number had been previously recorded for identification. As Detective Brunson left the porch, he noticed a woman leaving the residence. Detective Brunson returned to his vehicle, transmitted a description of the man on the porch, notified the surveillance team that the deal had been completed, and drove away.

After Detective Brunson left the area, other members of the SCAT team went to the East Desoto residence, where they found Jerry Plummer and a woman seated on the porch. Detective Thomas Murphy saw that Plummer matched the description transmitted by Detective Brunson of the man on the porch. The detectives arrested and searched Plummer but failed to find either the "buy" money or any additional narcotics. Detective Murphy then noticed money sticking out of the woman's closed right hand which turned out to be the "buy" money. Plummer was taken to the narcotics office where Detective Brunson positively identified Plummer as the man who sold him the marijuana. The transaction took place 639 feet 5 inches from the front gate of Lowell Elementary School, 1409 East Linton, which was in session on that day.

### A. Admission of Transcript

In his first point Plummer claims that the trial court erred in admitting into evidence a transcript of the tape recording of the conversation between Detective Brunson and the drug seller, which identified the undercover police officer as "Det. Brunson" and the drug seller as "Jerry Plummer." The trial court overruled Plummer's objection that the transcript should have identified the drug seller as "suspect." Plummer did not ask for a cautionary instruction.

 Transcripts of a tape recording may be used if portions of the tape are inaudible or there is a need to identify the speakers. *State v. Engleman*, 653 S.W.2d 198, 200 (Mo.1983). The admissibility of transcripts of tape recordings is within the

trial court's discretion. *State v. Gleason*, 813 S.W.2d 892, 896 (Mo.App.1991). In order to demonstrate reversible error, a defendant must show that the admission of the transcript prejudiced his case. *State v. Montgomery*, 590 S.W.2d 105, 108 (Mo.App.1979).

Plummer argues that identification of the drug seller on the tape recording was a fact issue for the jury's determination and, by identifying Plummer as the drug seller, the state usurped the province of the jury and predisposed the jury to believe that the drug seller on the tape was Plummer before the case was submitted to the jury for deliberation.

One of the foundational requirements for the admission of a tape recording is that the speakers on the tape be identified. *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); *State v. Spica*, 389 S.W.2d 35, 44 (Mo.1965), *cert. denied*, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966). Detective Brunson identified Plummer's voice on the tape recording. He testified that Plummer was the man who sold him the marijuana and was subsequently arrested, that he had listened to the tape recording, and that he recognized Plummer's voice on the tape recording as that of the drug seller. The accuracy of his voice identification was for the jury. *United States v. Smith*, 635 F.2d 716, 719 (8th Cir.1980).

Plummer argues that the use of his name on the transcript unfairly emphasized Detective Brunson's voice identification. We disagree. Since identification of the speaker was a foundational requirement, identification of the speaker was required. The jury was informed that the state prepared the transcript. Thus the identification on the transcript did not give the identification any more weight than it had already been given by the state's witness. Although it was in evidence, the transcript was not sent to the jury room. Plummer cites no precedent holding that the naming of the speakers on the tape as identified at trial is prejudicial. We find no prejudice in these circumstances.

Plummer further complains that the transcript was admitted without a cautionary instruction to the jury. However, Plummer did not ask for a cautionary instruction regarding the use of the transcript and thus waived any requirement that one be given. *State v. Stout*, 675 S.W.2d 931, 937 (Mo.App. 1984).

The trial court did not abuse its discretion in allowing the jury to view the transcript while listening to the tape. Point one is denied.

### B. *Batson Motion*

In his second point Plummer asserts that the trial court erred in overruling his *Batson* motion in which he asserted that the state used three peremptory strikes in a discriminatory fashion against three black venirewomen.

Plummer raised a timely *Batson* motion at trial. He argued that the fact the state used four of its peremptory strikes against black venirepersons raised "a prima facie case that the state may have used its peremptory challenge in a discriminatory fashion." The prosecutor explained why she struck one black venireman. This strike is not challenged on appeal. The prosecutor further advised the trial court that she struck the three black venirewomen for the same reasons she struck a white venirewoman: they were women, they had no children, and they had not answered many of the questions posed to the entire panel. The trial court invited Plummer to respond to the state's proffered reasons. However, Plummer's counsel merely stated, "I again raise my objection to their being taken off the panel based on the reasons offered by the State." The trial court overruled Plummer's *Batson* challenge, stating, "I don't find significant evidence of any discriminatory techniques by the State."

Plummer argues that the reasons given by the state were pretextual and discriminatory. Plummer has failed to preserve this error for review.

The following steps must be taken in the trial court with respect to a *Batson* motion:

1. The defendant must raise a *Batson* challenge with regard to one or more

specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong.

2. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike.

3. If the state articulates acceptable reasons, the defendant has the burden to show that the proffered reasons were pretextual and that the strikes were racially motivated.

*State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc); *cert. denied,* — U.S. —, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992); *State v. Aziz,* 844 S.W.2d 531, 535 (Mo.App.1992).

If a defendant fails to challenge the state's explanation in the trial court, the defendant may not challenge the state's explanation on appeal. *State v. Kelly,* 851 S.W.2d 693, 697 (Mo.App.1993); *State v. Jackson,* 809 S.W.2d 77, 81 (Mo.App.1991). In this case, unlike *Jackson* and *Kelly,* defense counsel did state that he objected to the state's reasons, but he gave no grounds for his objection and made no attempt to show that the state's reasons were pretextual. This is the equivalent of a failure to respond. Having made no showing to the trial court that the state's explanations were pretextual, Plummer has failed to sustain his burden of proof and presents nothing for our review. *State v. Hudson,* 822 S.W.2d 477, 481 (Mo.App.1991). Point two is denied.

## C. *Failure to Strike For Cause*

In his third point Plummer claims the trial court erred in failing to strike a venireperson for cause. He asserts this action deprived him of an impartial jury as guaranteed by the United States and Missouri constitutions because he was required to use one of his peremptory strikes to exclude that juror.

### 1. Nature of Right Asserted

■ Before we address the merits of this point, we must address the source and nature of the right Plummer claims was violated. He first claims that the loss of the peremptory strike engendered by the trial court's failure to strike a venireperson for cause violates his right to an impartial jury as guaranteed by the Sixth Amendment to the United States Constitution. It has, however, been expressly held that a defendant's loss of a peremptory strike does not violate the Sixth Amendment right to an impartial jury. *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988); *State v. Treadway,* 809 S.W.2d 58, 61 (Mo.App.1991). *Ross* holds that the Sixth Amendment right to an impartial jury refers to the impartiality of the twelve jurors who ultimately sit on a case, and is not violated by the loss of a peremptory challenge because such challenges are not constitutionally required. 487 U.S. at 86, 88, 108 S.Ct. at 2277–78.

■ Plummer also asserts this action violates his right to an impartial jury under article I, §§ 18(a) and 22 of the Missouri Constitution. There is no question that failure to grant a meritorious motion to strike a venireperson for cause in a criminal case can be prejudicial error under state law. Whether this derives from a right to an impartial jury under the Missouri Constitution, as claimed by Plummer, merits discussion.

■ It is a fundamental precept of Missouri law that a defendant in a criminal case must be afforded a full panel of qualified jurors before being required to make peremptory challenges and that a "qualified" juror is one who is not subject to a meritorious strike for cause. This guarantee appears to have originated in an interpretation of an early Missouri statute. In *State v. McCarron,* 51 Mo. 27 (1872), the supreme court construed Wagner's Mo.Stat., ch. 111, art. VI, § 7, at 1102, which stated:

There shall be summoned and returned in every criminal cause, a number of qualified jurors equal to the number of peremptory challenges, and twelve in addition; and no party shall be required to make peremptory challenges before a panel of such number of competent jurors shall be obtained.

The court said:

The section is plain; there must be a full *panel of competent jurors qualified and obtained before either party can be required to make peremptory challenges.*

*McCarron,* 51 Mo. at 28. Since *McCarron* this rule has been repeatedly cited and applied by the Missouri Supreme Court and appellate courts, although usually without reference to a statutory source. At the same time Missouri statutes governing peremptory strikes have to the present continually used the word "qualified" to describe the list of jurors from which peremptory strikes are to be made. *See, e.g.,* § 494.480.4 RSMo (Cum. Supp.1989); § 546.180.3 RSMo 1986; § 4066 RSMo 1939; § 3676 RSMo 1929; § 4020 RSMo 1919; § 5226 RSMo 1909. Missouri cases have consistently interpreted "qualified" to mean free from bias or prejudice and not subject to a meritorious motion to strike for cause. *See State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989), *cert. denied,* 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). Thus, denial of a legitimate request to excuse a biased venireperson for cause constitutes reversible error. *Id.*

Despite the great number of cases that cite and apply this rule, very few opinions have identified this right as encompassed by the right to an impartial jury under the Missouri Constitution. The seminal case espousing this theory appears to be *State v. Thompson,* 541 S.W.2d 16, 17 (Mo.App.1976), which held:

> This proposition is rooted in the constitutionally guaranteed right of every accused to a "public trial by an impartial jury", Mo. Const. Art. 1, Sec. 18(a), and personifies a dedicated judicial effort to preserve inviolate this constitutionally guaranteed right in the broadest sense.

This passage was quoted with approval in *State v. Morrison,* 557 S.W.2d 445, 446 (Mo. banc 1977), and noted in *State v. Stidum,* 684 S.W.2d 448, 450 (Mo.App.1984).

After the United States Supreme Court decision in *Ross,* our state courts have reasserted a defendant's right to have a full panel of qualified jurors before being required to make peremptory challenges. In *State v. Wacaser,* 794 S.W.2d 190, 193 n. 1 (Mo. banc 1990),[1] the supreme court noted that the

right was supported by a long line of cases going back to *McCarron.* The court pointed out that § 546.180.3 and its predecessors required delivery of "a list of jurors found by the court to be qualified to sit in the case" prior to the exercise of peremptory strikes. *Id.* at 192. The court also stated, "Our holdings are not based on abstract constitutional provisions, but on explicit statutory language. A juror who should be excluded for cause under § 546.150 is not a 'qualified' juror under § 546.180.3." *Id.* at 193.

In *State v. Schnick,* 819 S.W.2d 330, 333 (Mo. banc 1991), the supreme court described its decision in *Wacaser* as follows:

> After reviewing the history and caselaw construing §§ 546.150 and 546.180, the Court concluded that a defendant is entitled to a full panel of qualified jurors before making peremptory challenges and even though an unqualified juror does not actually serve, it is prejudicial error to fail to sustain a meritorious challenge for cause.

In *Treadway,* 809 S.W.2d at 62, this court interpreted *Wacaser* to mean that a claim of loss of a peremptory strike was based on statutory, not constitutional, law. We further held that the repeal of § 546.180.3 and the enactment of § 494.480.4, which contains similar language, did not change the right of a defendant to have a full panel of qualified jurors prior to the making of peremptory strikes. *Id.* On the other hand, in *State v. Lang,* 795 S.W.2d 598, 600 (Mo.App.1990), this court said that the Missouri Constitution affords a defendant greater protection than does the federal constitution as interpreted by *Ross* and held: "The Missouri Constitution, Art. I, § 18(a), entitles a defendant to a full panel of qualified jurors before he is required to expend his peremptory challenges."

 We conclude that the latest Missouri Supreme Court cases indicate that the right asserted by defendant is statutory, although

---

**1.** In *Wacaser* the state had asked the court to adopt the Oklahoma rule approved in *Ross* which prohibited a defendant from establishing reversible error when a meritorious challenge for cause had been overruled unless the defendant is forced to accept the challenged juror. The su-

preme court rejected this argument, stating: "We decline to depart from our long established standards, grounded on our statutes and confirmed in decisions, in favor of a holding that would severely dilute the value of peremptory challenges." *Wacaser,* 794 S.W.2d at 193.

they do not explicitly reject the cases declaring this right to be protected by the Missouri Constitution.[2] We will accordingly review Plummer's point as asserting a violation of a *statutory right rather than a constitutional right.* We do this to be consistent with the latest cases of our supreme court. However, this treatment does not effect the analysis of this point or its outcome. Whether the source of the right is statutory or constitutional, it is prejudicial error for the trial court to fail to sustain a meritorious challenge for cause.[3]

## 2. Motion to Strike for Cause

We turn to the merits of this point. During voir dire by the state, Venireperson Walter Sawicki stated that one of his son's friends had "recently almost killed himself with drugs." Venireperson Sawicki stated that he did not "think he could put his feelings aside about drugs, no." Upon further questioning by the state, Sawicki stated that he "probably could" make his determination of Plummer's guilt or innocence "based on whatever I hear." The state then asked whether he "could follow the Court's instructions and make your decision about guilt or innocence based only on what you hear in this [courtroom]?" Sawicki responded, "Yes, I think I could."

Later, Sawicki stated that his son had been arrested twice and he expressed some reservations about the working of the criminal justice system in those cases. The state asked him whether he could make his determination of guilt or innocence based only on what he heard in court. Sawicki responded by nodding his head affirmatively.

The trial court subsequently conducted the following independent examination of Sawicki:

THE COURT: Mr. Sawicki, based on the—on some of the answers that you had

given this morning and this afternoon, I need to ask you do you think that you could fairly hear the evidence in this case if you were chosen as a juror?

VENIREMAN SAWICKI: I think I could, yes.

THE COURT: Do you think you could fairly follow the Court's instructions given to you?

VENIREMAN SAWICKI: Yes.

Plummer moved to have Sawicki struck for cause "based on his earlier statements about not being able to put his feelings about drugs aside which he stated earlier." The trial court overruled the objection because Sawicki later stated he could fairly follow the instructions and fairly hear the evidence.

As we have stated, a defendant is entitled to a full panel of qualified jurors before being required to make peremptory challenges. *Wacaser,* 794 S.W.2d at 193. To qualify as a juror, a venireperson must be able to enter upon that service with an open mind which is free from bias or prejudice. *Treadway,* 809 S.W.2d at 62. In order to be struck for cause, a venireperson's beliefs must impair that person's ability to follow the instructions. *State v. Debler,* 856 S.W.2d 641, 647 (Mo. banc 1993).

A trial court has wide discretion in determining a potential juror's qualifications, after considering relevant voir dire in its entirety. *State v. Williamson,* 836 S.W.2d 490, 499 (Mo.App.1992). That determination is a decision of fact made by the trial court based on observing the venireperson and hearing the answers given. *Debler,* 856 S.W.2d at 647. Because of the trial court's unique opportunity to observe a venireperson on voir dire, we will not disturb the trial court's ruling on a challenge for cause absent a clear abuse of discretion and a real

---

**2.** However, in his opinion concurring in result in *Wacaser,* Justice Robertson said:

> The Missouri Constitution, too, measures its guarantee against the jury finally seated, not against the procedure by which an impartial jury is selected.
>
> The majority is quite correct when it says "[o]ur holdings are not based on abstract constitutional provisions...." (Op. at 193). The

statutes, not the constitution, control the use of peremptory challenges in this state.
794 S.W.2d at 197. (Robertson, J., concurring in result).

**3.** Indeed, in his argument, Plummer's primary case is *Wacaser* and he does not cite any cases to support his claim that a constitutional right was violated.

possibility of injury to the complaining party. *Williamson*, 836 S.W.2d at 499. Any doubts as to the trial court's ruling are resolved in the trial court's favor. *Treadway*, 809 S.W.2d at 62.

 The trial court has a duty to make an independent inquiry when a venireperson equivocates about his or her ability to be fair and impartial. *Id.* When an answer to a question suggests the possibility of bias and, upon further questioning, the venireperson gives unequivocal assurances of impartiality, the bare possibility of bias will not disqualify the venireperson or deprive the trial court of discretion to seat the venireperson. *Id.* If it appears reasonable to the trial court that the venireperson's opinion will yield and that the potential juror will determine the issues under the law, the venireperson is not subject to being excused for cause. *Williamson*, 836 S.W.2d at 499. For there to be an abuse of discretion it must clearly appear from the evidence that the challenged venireperson was in fact prejudiced. *Treadway*, 809 S.W.2d at 62; *Wacaser*, 794 S.W.2d at 193.

 Although Sawicki initially stated that his feelings about drugs could color his view of the case, he later stated that he could evaluate the case separately from his feelings about drugs and the criminal justice system. During an independent examination by the trial court, Sawicki unequivocally answered "yes" when asked if he could fairly follow the trial court's instructions. Although some of his answers during the voir dire were couched in terms of "probably" and "I think," they were not equivocal in context. Prospective jurors often use such vernacular expressions rather than speaking in absolutes. *State v. Mercer*, 618 S.W.2d 1, 7 (Mo. banc), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981); *State v. Schwer*, 757 S.W.2d 258, 263 (Mo.App.1988). The trial court was in the best position to determine the impact of these answers when made. The responses were consistently affirmative and do not reveal the uncertainty expressed by the venirepersons in *Wacaser*, 794 S.W.2d at 191–92, and *State v. Hopkins*, 687 S.W.2d 188, 189–91 (Mo. banc 1985).

The trial court did not abuse its discretion in failing to strike Venireperson Sawicki. Point three is denied.

### D. *Closing Argument*

For his fourth point Plummer contends that the trial court plainly erred in failing to *sua sponte* declare a mistrial during the state's rebuttal closing argument. Plummer asserts that the state misstated the evidence and improperly appealed to the community's fears of a drug problem so as to inflame and prejudice the jury.

 Plummer concedes his point is not preserved for appeal because he did not specifically object at trial. He requests plain error review. Rule 29.12(b); *State v. Watson*, 839 S.W.2d 611, 617 (Mo.App.1992). Under this standard, we may reverse only if the closing argument so impacted the defendant's rights as to result in manifest injustice or a miscarriage of justice. Rule 30.20; *Watson*, 839 S.W.2d at 617.

 An appellate court should rarely grant relief on assertions that the trial court plainly erred in not *sua sponte* taking remedial action during closing argument. *Watson*, 839 S.W.2d at 617. In the absence of a specific request for relief, any action taken by the trial court is uninvited interference with summation and may itself be error. *Id.* Substantial latitude is allowed during closing argument and, under plain error review, improper argument does not justify relief unless the defendant has demonstrated that the argument had a decisive effect on the jury. *Id.*

Plummer challenges the following portion of the state's closing argument:

[STATE]: And you need to send a message, send a message to all the other drug dealers out there, to Mr. Plummer, to all the other Neighborhood Watch associations who called the police on these people that the juries are there to support them, that when it all comes together, when you have all done your job, when the prosecutor has done their [sic] job and looked over the evidence, when the Judge has presided over the case, when the police officers have put all this manpower into one case, three

people on the arrest team, one guy monitoring a Kel, an undercover police officer who is risking his life, by the way, because he goes back out there day after day making these undercover buys and then he comes in here and testifies in front of you.

He's putting his life in jeopardy, and we have the surveillance people, all these people, the neighborhood people who call the police and complain, all this work comes to the point where the case is in front of you now and it is your job, your duty, you took an oath and I'm asking you to send that message, send it to the people in the neighborhood associations who call police. Send it to the police that you're behind them. Send it to the streets and send it especially to Mr. Plummer that you will not tolerate drugs being sold in the city. You will not tolerate them being sold in your neighborhood, not in your neighborhood, and most of all don't sell it around our children, keep it away from our schools.

[PLUMMER'S COUNSEL]: Objection, Your Honor.

[STATE]: Because we won't tolerate it. We will find you guilty. We will look at the evidence and we will find you guilty. That's what I'm asking you to do when you go back to your jury room is to find this man guilty of the crime he's been charged with, illegal sale of marijuana within a thousand feet of a school. Thank you.

Plummer contends that the argument that the undercover officer risked his life was inflammatory and not supported by any evidence. He also argues that the argument implied that Plummer sold drugs around children, which he contends was prejudicial and unsupported by the evidence. He further asserts that the argument was prejudicial because it was calculated to sweep the jury into a passion to convict Plummer in order to protect community values and cure the drug problem.

■ The state is permitted to argue such propositions as the prevalence of crime in the community and the personal safety of its inhabitants, and such pleas may call upon common experience. *State v. Clemmons*, 753 S.W.2d 901, 909 (Mo. banc), *cert. denied*, 488

U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). The state may further argue that conviction of the defendant is part of the jury's duty to prevent crime. *Debler*, 856 S.W.2d at 651. The prosecutor may refer to the need for strong law enforcement as a deterrent to crime and infer the effect of the jury's failure to perform its duty and uphold the law. *State v. Gilmore*, 681 S.W.2d 934, 944 (Mo. banc 1984).

All of the above are legitimate arguments, as long as the prosecutor stays within the record and the reasonable inferences to be drawn therefrom and does not make an inflammatory appeal to the jurors to arouse their personal hostility toward or personal fear of the defendant, such as implanting in their minds the fear that the defendant's acquittal will endanger their own personal safety or that of one of their family members. *State v. Evans*, 406 S.W.2d 612, 616–17 (Mo. 1966); *State v. Steward*, 564 S.W.2d 95, 98–99 (Mo.App.1978); *State v. Heinrich*, 492 S.W.2d 109, 114 (Mo.App.1973).

■ While a prosecutor may not express an opinion implying awareness of facts not available to the jury, a prosecutor has the right to draw any inference from the evidence which he or she believes in good faith to be justified. *Schwer*, 757 S.W.2d at 263. Further, it is proper for a prosecutor to retaliate to an issue raised by a defendant's closing argument even if the prosecutor's argument would otherwise be improper. *State v. Walls*, 744 S.W.2d 791, 798 (Mo. banc), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

■ In its rebuttal argument, the state could permissibly argue the reasonable inference that undercover drug officers put their lives in danger to uphold the law. Evidence that an undercover officer was in actual danger was not necessary. Further, the argument was a proper retaliation to defendant's argument that the undercover officer's "day-to-day job is to deceive people, not telling the truth."

■ Likewise, the state could argue that enforcement of the prohibition of selling drugs in school zones would prevent drugs

from being sold around children. This argument was a proper reference to the need for strong law enforcement. We disagree that the argument implied that Plummer sold drugs around children, but even if it did, the presence of children at the school six hundred feet away could be permissibly inferred from the evidence in the record that the transaction took place at 12:30 p.m. on a day that school was in session.

Further, the argument was not calculated to "inflame" the jury to convict Plummer in order to cure a societal drug problem. Rather the remarks permissibly appealed to the jury's duty to uphold the law and not tolerate violations of this particular statute. *Schwer,* 757 S.W.2d at 264; *Steward,* 564 at S.W.2d at 99; *State v. Poole,* 556 S.W.2d 493, 495–96 (Mo.App.1977). Plummer's reliance on *United States v. Solivan,* 937 F.2d 1146, 1153 (6th Cir.1991), for the proposition that a prosecutor may not urge jurors to convict a criminal defendant in order to solve a societal problem is misplaced.

The trial court did not plainly err in not *sua sponte* declaring a mistrial during the state's rebuttal closing argument. Point four is denied.

### E. *Constitutionality of § 195.214*

For his fifth point on direct appeal (Point VI in his brief), Plummer argues that the trial court plainly erred by failing to "challenge" the constitutionality of § 195.214 RSMo (Cum.Supp.1989). Plummer claims that § 195.214 is unconstitutional on its face and as applied because it is vague and ambiguous.

Plummer cites no authority for his implied assumption that trial courts have some duty to *sua sponte* "challenge" the constitutionality of statutes. Further, Plummer concedes that *he* did not challenge the constitutionality of the statute at trial or in his motion for new trial. A constitutional question is waived if not raised at the earliest opportunity. *State v. Anthony,* 837 S.W.2d 941, 945 (Mo.App.1992).

Moreover, we have upheld the constitutionality of § 195.214 on its face and as applied and found that it is neither vague nor ambiguous. *State v. Wheeler,* 845 S.W.2d 678, 680–81 (Mo.App.1993); *State v. Prowell,* 834 S.W.2d 852, 854–55 (Mo.App.1992). This point is denied.

### F. *Grand and Petit Jury Selection Procedures*

For his last point on direct appeal, Plummer asserts that the trial court erred in overruling his motion to quash the indictment or in the alternative to stay the proceedings. Plummer claims the trial court failed to comply with §§ 494.400 through 494.505 RSMo (Cum.Supp.1989) involving the selection of grand and petit jurors and thus denied him a jury which reflected a fair cross-section of the citizens of the City of St. Louis.

We first address the argument relating to grand jury selection. Plummer premises his argument on a statistical study compiled in October 1990 by Kenneth Warren, Ph.D. The data involved practices prevalent in the grand jury selection process from 1985 to May 1990. We have held this statistical analysis to be irrelevant to grand jury selection procedures occurring after the 1989 changes to the statutory provisions of §§ 494.400–494.505. *Wheeler,* 845 S.W.2d at 681. These revisions were in effect when the grand jury returned Plummer's indictment in December 1990. "Because the statistical analysis did not cover the period of time relevant to the prosecution of defendant, the data cannot be used to support his constitutional challenge to the grand jury selection procedures." *Id.*

Plummer's challenge to the selection of the petit jury was originally made in a motion to stay all jury trials in an earlier criminal case. The Honorable Ronald M. Belt held a hearing on that motion on October 10 and 13, 1990. On October 16, 1990, Judge Belt ordered all jury trials in the circuit stayed. Although he specifically found no under-representation of racial, gender, or age groups, he did find the procedures used in granting juror continuances resulted in a non-random selection of some juror panels. This impropriety was immediately corrected by the Board of Jury Com-

missioners whereupon Judge Belt lifted the stay of jury trials.

The effect of this order has been subsequently raised on appeal on numerous occasions. In *State v. Landers*, 841 S.W.2d 791, 793 (Mo.App.1992), we found with respect to the evidence before Judge Belt:

> [D]efendant's expert witness reviewed age, sex, and race data of 141 jury panels in 1989 and 1990. Analyzing the data over this entire period he concluded that representation of females did not differ significantly from what you would expect by chance. He also testified there were "no problems" with race and that blacks were not underrepresented. Finally, he testified that young people, age 21–29, were underrepresented by 6% but that underrepresentation of less than 10% was insignificant.

We held that "[t]he evidence amply supports Judge Belt's finding of no under-representation of racial, gender, or age groups" and found the trial court did not err in denying the motion to quash. *Id.* An administrative order issued by the Board of Jury Commissioners before Plummer was indicted corrected the perceived deficiencies in the petit jury selection procedures. *Wheeler*, 845 S.W.2d at 681–82. Plummer presented no evidence that the new procedures in place at the time of his trial were inadequate. This point is denied.

## II. POST–CONVICTION APPEAL

Plummer raises two points in his appeal from the motion court's denial of relief under Rule 29.15, one point in the brief prepared by his attorney and one two-part point in a *pro se* brief. In the brief prepared by his attorney, Plummer asserts the trial court's denial of his motion for post-conviction relief was clearly erroneous because he was denied effective assistance of counsel when his trial counsel failed to object to the introduction of a photograph showing a "Warning Drug Free Zone" sign in front of a school. In his *pro se* brief Plummer argues that the motion court clearly erred in failing to issue findings of fact and conclusions of law on all points presented and that his post-conviction counsel abandoned him by not proving that Plum-

mer's voice was not on the tape recording used at trial.

Appellate review of a denial of post-conviction relief is limited to whether the findings, conclusions and order of the motion court are clearly erroneous. Rule 29.15(j); *State v. Aziz*, 844 S.W.2d 531, 535 (Mo.App.1992). The motion court's findings, conclusions and order are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Aziz*, 844 S.W.2d at 535.

### A. *Failure to Object at Trial*

To prevail on a claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* In determining whether counsel's performance was deficient, the inquiry must be whether, in light of all the circumstances, counsel's assistance was reasonable. *Aziz*, 844 S.W.2d at 536. In order to show prejudice, a movant must show there was a reasonable probability that, but for the errors by movant's attorney, the fact finder would have had a reasonable doubt respecting movant's guilt. *Id.*

The photograph admitted at trial showed the front gate of the school, the measuring device used by a police officer to measure the distance from the location of the drug sale to that gate, and a sign stating "Warning Drug Free Zone." In his amended 29.15 motion Plummer argued that counsel's failure to object to the photograph's admission was ineffective assistance of counsel because the "Warning Drug Free Zone" sign was not visible from the scene of the drug transaction and thus irrelevant. He asserted that the admission of the photograph was prejudicial because the jury might have inferred from it that he had notice he was selling drugs in a drug free zone. After a hearing the motion court concluded that counsel had no duty to

object to admissible evidence and could not be ineffective for failing to make meritless objections.

▮ A criminal defendant cannot be prejudiced by counsel's failure to make non-meritorious objections. *Debler*, 856 S.W.2d at 652 (Mo. banc 1993). Trial counsel has no duty to object to admissible evidence. *State v. Powell*, 793 S.W.2d 505, 509 (Mo.App. 1990). An objection to this photograph would have been meritless. Photographs are generally admissible if they are relevant to a material issue and enable the jury to better understand testimony. *State v. Murray*, 744 S.W.2d 762, 772 (Mo. banc), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). The photograph was relevant to the state's charge of selling drugs within one thousand feet of a school. It showed the school, the measuring device and the place where the police officer made his measurement. Photographs do not become inadmissible merely because other evidence may have described what is shown in the photograph. *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

▮ The inclusion of the "Warning Drug Free Zone" sign in the photograph did not render it inadmissible. Plummer was charged with selling the drugs within a thousand feet of a school, a zone in which drug transactions are particularly prohibited. The jury was aware of this from the nature of the charge and the proof at trial. Notice was not an element of the crime, thus the sign could not have improperly proved an element of the crime. The picture was not represented to show the scene of the crime. In fact, diagrams admitted at trial showed the scene of the crime to be elsewhere. Further, the photograph was not prejudicial because Plummer's defense did not turn on whether the transaction took place near a school, but turned instead on whether it was Plummer who engaged in the transaction.

The motion court did not clearly err in denying Plummer's claim of ineffective assistance of counsel by reason of counsel's failure to object to the admission of the photograph.

## B. *Failure to Issue Findings and Conclusions*

▮ The motion court must enter findings of fact and conclusions of law on all issues presented. Rule 29.15(i). In his *pro se* brief Plummer argues that the trial court failed to make any findings of fact or to rule on his discovery request to produce the tape recording used at trial. Plummer had made a written "motion" for production of the Kel tape for inspection. Under Rule 58.01(b), the party upon whom such a request is served is required to respond within twenty days. A court does not intervene unless a motion for enforcement of discovery is filed under Rule 61.01.

The record does not show whether the tape recording was produced. However, there is no Rule 61.01 motion in the record. Further, although there was testimony about the tape recording at the hearing, there was no mention that the tape recording had not been produced or was still being sought. Under this record, there would be no reason for the court to rule on the request for production or address it in its findings, conclusions and order on the 29.15 motion. The motion court did not violate Rule 29.15(i).

## C. *Abandonment by Post-Conviction Counsel*

▮ Plummer's claim that his post-conviction counsel abandoned him by not proving that his voice was not on the tape recording or that the tape recording had been tampered with is not one which may be raised on appeal from an order denying a post-conviction motion. An allegation of ineffective assistance on the part of post-conviction counsel is not cognizable on appeal unless the record shows such a total default in carrying out the obligations imposed on appointed counsel by Rule 29.15(e) as to constitute abandonment. *State v. Bradley*, 811 S.W.2d 379, 384 (Mo. banc 1991). In this situation there was no obligation on the part of post-conviction counsel to make the proof requested.

▮ The factual issues of whether Plummer's voice was on the tape or whether the tape had been tampered with were evi-

dentiary trial issues which could not be relitigated by the post-conviction motion. A motion for post-conviction relief is not available to relitigate a defendant's guilt or innocence. *Loewe v. State,* 778 S.W.2d 331, 333 (Mo.App. 1989).

The judgment of the trial court and the order of the motion court are affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.