**STATE of Missouri, Respondent,**

v.

**Aaron DELANEY, Appellant.**

**No. WD 54791.**

Missouri Court of Appeals,
Western District.

July 21, 1998.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and SMART and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Aaron Delaney appeals his convictions following jury trial for voluntary manslaughter, section 565.023, RSMo 1994, and armed criminal action, section 571.015, RSMo 1994, and consecutive terms of fifteen years imprisonment. Mr. Delaney raises two issues on appeal. He argues that the trial court erred and abused its discretion by (1) allowing the state to misstate the evidence in closing argument; and (2) permitting the state to argue that the juror's verdicts would be a "public and permanent record" in closing argument where the argument sought to intimidate the jurors to find Mr. Delaney guilty through fear of public exposure. The judgment of convictions is affirmed.

## FACTS

Edward Moulder and Terry Smith decided to purchase crack cocaine on July 7, 1996. Between noon and approximately 3:00–4:00 p.m., they made two separate attempts to purchase crack cocaine, but, in each case, the substance they purchased was not actually crack cocaine. Mr. Moulder and Mr. Smith then attempted to purchase crack cocaine from a man in a purple tank top and black pants whom Mr. Smith later identified as Aaron Delaney. Mr. Delaney gave the men one rock of crack cocaine to try, and it also was not crack cocaine.

Mr. Moulder, after beginning to smoke the item given to him, threw his pipe to the floor of his truck and said, "This ain't crack cocaine." When Mr. Moulder began to drive away, Mr. Delaney jumped into the bed of the truck and stated, "Give me my fucking money, honkey, or I'll bust your head." As Mr. Moulder continued to drive the truck, Mr. Delaney leaned around the side of the truck and tried to hit Mr. Moulder. While Mr. Moulder was attempting to avoid Mr. Delaney's blows, he sideswiped a number of other vehicles. Mr. Moulder then attempted to give Mr. Delaney $20.00 to persuade him to exit the truck bed. Mr. Delaney refused the money, however, and continued to hit Mr. Moulder.

Mr. Delaney then picked a crowbar from the truck bed and swung at Mr. Moulder through the driver's side window. The crow-

bar hit Mr. Moulder in the eye and side of the head, causing him to slump over on Mr. Smith. As Mr. Smith tried to maneuver the truck, he sideswiped another vehicle. Mr. Smith then noticed that two vehicles were following them. Mr. Moulder stopped the truck in the parking lot of a fire station. The persons in the two vehicles that were following the men climbed in the truck bed and started hitting Mr. Moulder and Mr. Smith. Mr. Delaney broke the back window of the truck with the crowbar and hit Mr. Moulder two more times.

Mr. Smith put the truck into reverse in a failed attempt to get the men out of the truck. Mr. Moulder continued driving, eventually stopping at a friend's house. During this time, Mr. Smith was on the floor of the truck. When the truck stopped at their friend's house, Mr. Smith got out of the truck to call 911. Mr. Smith saw the group of men trying to pull Mr. Moulder from the truck. When Mr. Smith returned after calling 911, he saw Mr. Moulder lying in the middle of the street with a group of men kicking him in the ribs and stomach. Mr. Smith saw Mr. Delaney pick up half a brick and slam it into Mr. Moulder's head in the same area where Mr. Delaney had hit Mr. Moulder with the crowbar. Mr. Moulder crawled to the side of the street and curled up in a fetal position. Officer Jeff Atwood arrived three minutes after being dispatched and found Mr. Moulder lying in the street unconscious. Officer Atwood also saw Mr. Delaney at the scene. Mr. Moulder suffered five rib fractures, a skull fracture above his left ear, bleeding inside the skull and a herniation of the brain. Mr. Moulder died three days later of delayed effects of blunt injury to the head.

Four police officers were investigating the attack on Mr. Moulder on July 8, 1996. As the officers were at the intersection of 24th and Lawn, a vehicle drove up and the occupants exchanged words with the officers. The officers followed the car to 2327 Lawn where it stopped, and the driver exited the car and went into a house. Mr. Delaney then approached the officers. When one of the officers informed Mr. Delaney that they were investigating a hit and run that occurred the previous evening, Mr. Delaney responded, "Yeah, I the [sic] hit the mother-fucker up side the head with a crowbar to keep him from leaving."

Mr. Smith went to the police department on July 8, 1996, to give his formal statement. While he was waiting in the lobby, Mr. Smith saw an officer bring Mr. Delaney in. When Mr. Smith got into his interview, he told the officer that the man who had beaten Mr. Moulder was in the lobby. The officer then showed Mr. Smith a picture of Mr. Delaney, and Mr. Smith again identified Mr. Delaney as the man who beat Mr. Moulder.

Mr. Delaney was charged with murder in the second degree and armed criminal action for the death of Mr. Moulder. At trial, Mr. Delaney introduced witnesses to rebut Mr. Smith's testimony that he was the individual who sold drugs to Mr. Moulder and Mr. Smith and who fatally struck Mr. Moulder. Michelle Smith testified that she knew Mr. Delaney. She testified that she saw Mr. Moulder's truck driving down her street with an unidentified black man in the truck bed. Ms. Smith further testified that when this was occurring, Mr. Delaney and other individuals were standing at the corner. Ms. Smith finally noted that Mr. Delaney was wearing a white tank top.

Mark Braley testified that he was at his home on July 7, 1996, when Mr. Moulder's truck stopped in front of his home. Mr. Braley testified that he saw a black man wearing shorts and a white t-shirt in the bed of the truck. Two other men then came from a car; one of those men was wearing a maroon shirt. Those two men caught up with the truck and opened the driver's side door. At this point, Mr. Braley went inside to tell his grandmother what was occurring. When he returned, the three men were standing around Mr. Moulder who was lying in the street. Mr. Braley did not know which of the men struck Mr. Moulder. When the police showed Mr. Braley a photograph of Mr. Delaney, Mr. Braley stated he resembled one of the men at the scene, but he could not remember if Mr. Delaney was the man in the maroon shirt.

After presentation of the evidence, the jury found Mr. Delaney guilty of voluntary manslaughter and armed criminal action.

The court sentenced Mr. Delaney as a prior offender to consecutive terms of fifteen years imprisonment. This appeal followed.

## I. MR. DELANEY WAS NOT PREJUDICED BY THE PROSECUTION'S MISSTATEMENT OF THE EVIDENCE DURING CLOSING ARGUMENT AND, HENCE, IS NOT ENTITLED TO A NEW TRIAL

As his first point on appeal, Mr. Delaney argues that the trial court erred and abused its discretion by overruling his objection to the prosecution's summation of the testimony of Mark Braley, a witness to the beating, where the summation misstated the evidence. Mr. Braley testified that while the photograph of Mr. Delaney looked like one of the men who was present when Mr. Moulder was beaten, he did not know whether Mr. Delaney was the man he had seen wearing the maroon shirt. Mr. Delaney argues the following comments during closing argument by the prosecution constitute reversible error because the prosecution misstated Mr. Braley's testimony:

> [The prosecution] Mr. Braley, he came and said what he saw. You can understand his testimony completely. And what he said is, "I don't know, I don't remember." I'll tell you one thing, he did look at this picture, that picture right here of this defendant, and on the stand under oath, he says, "That sure looks like the guy." And he said, "That sure looks like the guy in the purple shirt."
>
> [Mr. Delaney] No, Your Honor, Mr. Braley did not say that, he said this was the guy in the white truck and the pickup truck. That is just an outright lie.
>
> [The court] You know that's totally improper to make that kind of comment in this courtroom and I'll instruct you not to do it again. You will be overruled.
>
> [Mr. Delaney] I would ask you tell him to please stick to the evidence
>
> [The court] I don't know but what he is sticking to the evidence. The jury will remember the evidence.
>
> [The prosecution] Remember on cross-examination, I held up the picture of him and I said, "Does that look like the guy, could that be the guy in the purple shirt?" Re-

member he said, "It looks like him." I asked him that on cross-examination and that was his answer.

> [Mr. Delaney] I would ask to look at the records.
>
> [The court] You know that's why we have juries, they'll remember the evidence.
>
> [Mr. Delaney] Can we please approach? [after counsel approached the bench] That is not what he said. That is not what he said. I'm asking you-if you would look back at the tape you would know yourself that's not what he said. Mr. Braley testified that there was one guy in a white t-shirt in the back of the truck, another person in a maroon shirt. He said was it a white shirt.
>
> [The court] Can I-
>
> [Mr. Delaney] I apologize.
>
> [The court] We all don't remember. That's why we have a jury of 12 people that as collectively people do remember things. I can't say that it is or it isn't.

The trial court is afforded wide discretion in determining the permissible scope of counsel's argument to the jury and unless an abuse of discretion is demonstrated, to the prejudice of the accused, the case will not be reversed on appeal. *State v. Walls,* 744 S.W.2d 791, 797–98 (Mo. banc.1988), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Preston,* 861 S.W.2d 627, 631 (Mo.App.1993). A conviction will be reversed for improper argument only if it is shown the misstatement had a "decisive effect on the jury's determination," *State v. Mayo,* 927 S.W.2d 535, 537 (Mo.App.1996), or was "plainly unwarranted and clearly injurious." *State v. Ofield,* 651 S.W.2d 190, 194 (Mo.App.1983). "[E]rror which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong." *State v. Roberts,* 838 S.W.2d 126, 130 (Mo.App.1992) (citing *State v. Degraffenreid,* 477 S.W.2d 57, 65 (Mo. banc 1972); *State v. Ford,* 639 S.W.2d 573, 576 (Mo.1982)).

The prosecution concedes it misstated the evidence during closing argument. The prosecution argues, however, that the trial

court's statement that the jury will "remember the evidence" constituted a cautionary instruction that removed any potential prejudice caused by the misstatement. While it is true that a trial court's admonition to a jury to recall the evidence may be adequate as a "curative measure to dispel any possible confusion" caused by a misstatement of the evidence during closing argument (*State v. Green*, 641 S.W.2d 770, 773 (Mo.App.1982)), whether the trial court's statement that the jury will "remember the evidence" constituted a cautionary instruction need not be determined, because Mr. Delaney has failed to show the requisite prejudice resulting from the prosecution's misstatement of the evidence.

■ Although the prosecution misstated the evidence during closing argument, the evidence of Mr. Delaney's guilt was overwhelming Mr. Smith was present throughout the attack on Mr. Moulder and identified Mr. Delaney on several occasions as the individual who struck Mr. Moulder in the head with the crowbar and the brick. Mr. Braley and the officer who arrived at the crime scene testified that Mr. Delaney was present at the crime scene. The day following the attack on Mr. Moulder, Mr. Delaney told two police officers that he struck Mr. Moulder in the head with a crowbar to prevent him from leaving the scene. To counter the evidence establishing that Mr. Delaney was present during Mr. Moulder's beating and inflicted the fatal blow to Mr. Moulder's head, Mr. Delaney introduced the testimony of Mr. Braley. Mr. Braley, however, testified that he did not see which man inflicted the fatal blow to Mr. Moulder's head. Mr. Braley's testimony, therefore, did not refute the testimony of Mr. Smith and the investigating officer that Mr. Delaney was the individual who inflicted the fatal blow to Mr. Moulder's head. While the prosecutor misstated Mr. Braley's testimony regarding whether Mr. Delaney was the man wearing the maroon shirt rather than the white shirt, the misstatement did not address the dispositive issue of Mr. Delaney's guilt because Mr. Braley did not see who inflicted the fatal blow to Mr. Moulder. Because the evidence of Mr. Delaney's guilt was overwhelming, the prosecutions' misstatement of Mark Braley's testi-

mony did not prejudice Mr. Delaney. The trial court, therefore, did not abuse its discretion in failing to grant Mr. Delaney a new trial. Point one is denied.

## II. MR. DELANEY WAS NOT PREJUDICED BY THE PROSECUTION'S CLOSING ARGUMENT

As his second point on appeal, Mr. Delaney argues that the trial court erred and abused its discretion by overruling his objection to the prosecution's statements in closing argument that the verdict form was a public and permanent record of the jury's decision and, thus, the jury should do its duty to convict Mr. Delaney. Mr. Delaney specifically challenges the following statement made by the prosecution during closing argument:

If you walk this defendant out of this courtroom and you say he is not guilty, keep in mind what is going on here. When you have this verdict and you sign this verdict, there will be a form that you will sign, all 12 of you will sign the verdict form, whatever it is. And it becomes a public, permanent record. A public, permanent record of your decision in this case.

You have testimony in this case from two police officers who say, this defendant told them, yeah, I did it. Yeah, I did it. And faced with that you 12 are signing, I have an admission from the defendant in own words and I'm going to walk him out. It's a public and permanent record.

■ While a prosecutor may not express an opinion implying awareness of facts not available to the jury, a prosecutor has the right to draw any inference from the evidence which he or she believes in good faith to be justified. *State v. Plummer*, 860 S.W.2d 340, 350 (Mo.App.1993). The prosecutor is permitted to argue such propositions as the prevalence of crime in the community and the personal safety of its inhabitants, and such pleas may call upon common experience. *State v. Clemmons*, 753 S.W.2d 901, 909 (Mo. banc), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988); *Plummer*, 860 S.W.2d at 350. The prosecutor may further argue that conviction of the defendant is part of the jury's duty to prevent

crime. *State v. Debler*, 856 S.W.2d 641, 651 (Mo. banc 1993); *Plummer*, 860 S.W.2d at 350. The prosecutor may refer to the need for strong law enforcement as a deterrent to crime and infer the effect of the jury's failure to perform its duty and uphold the law. *State v. Gilmore*, 681 S.W.2d 934, 944 (Mo. banc 1984); *Plummer*, 860 S.W.2d at 350. All of the above are legitimate arguments, as long as the prosecutor stays within the record and the reasonable inferences to be drawn therefrom and does not make an inflammatory appeal to the jurors to arouse their personal hostility toward or personal fear of the defendant, such as implanting in their minds the fear that the defendant's acquittal will endanger their own personal safety or that of one of their family members. *Plummer*, 860 S.W.2d at 350 (citing *State v. Evans*, 406 S.W.2d 612, 616–17 (Mo.1966); *State v. Steward*, 564 S.W.2d 95, 98–99 (Mo. App.1978); *State v. Heinrich*, 492 S.W.2d 109, 114 (Mo.App.1973)).

■ The prosecution stated during closing argument that the jury's verdict would be "a public and permanent record." Considering the rest of the prosecutor's statement and its context, the implication is clear. The prosecutor was implying, by his statement that the verdict would be "a public and permanent record" that the community was watching the jury, and if the jurors did not convict the defendant, it will be unhappy with them. Although counsel are afforded great latitude in closing argument, counsel does not have unfettered license to say whatever they desire. To attempt to intimidate the jury by arguing, in some form, that the citizens of a community will have a record of the jury's verdict and that the evidence is such that consequences could result to the jury members if they do not convict the defendant is improper. The jury should not be encouraged to decide the guilt of a defendant on whether the citizenry of a community will approve of the verdict. The prosecution's comments were dangerously close to offending this prohibition and in a case with less compelling evidence may have been prejudicial. However, in this case, the evidence was overwhelming, and the defendant was not prejudiced. The trial court, thus, did not abuse its discretion in overruling Mr. Dela-

ney's objection to the prosecution's comments during closing argument. Point two is denied.

The judgment of convictions is affirmed.

All concur.