**STATE of Missouri, Respondent,**

**v.**

**Ronnie L. WILLIAMS, Appellant.**

**WD 39166.**

Missouri Court of Appeals,
Western District.

Feb. 2, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 1988.

Application to Transfer Denied
May 17, 1988.

Sean D. O'Brien, Public Defender, Jo Ann Arnold, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, C.J., and

TURNAGE and LOWENSTEIN, JJ.

KENNEDY, Chief Judge.

Defendant was convicted upon jury trial of two counts of selling marijuana, a controlled substance, § 195.020, RSMo 1983, and was sentenced by the court as a persistent offender to two consecutive 15–year terms of imprisonment, § 558.016, RSMo 1983.

The convictions of the defendant were had upon the testimony of an undercover informant by the name of Kim Elletson. Under the direction of the law enforcement officials of Livingston County, Ms. Elletson commenced her undercover work in and about Chillicothe on August 1, 1985. She was paid wages and expense money. She testified to purchasing marijuana from the defendant for $25.00 on January 15, 1986, and a second time on February 5, 1986, when she purchased marijuana for $27.50.

After Ms. Elletson had completed her work, the evidence was presented to a grand jury in Livingston County. It appears that they returned a number of indictments, 13 of them for drug offenses.

It may be gathered from the record that the grand jury investigation and the indictments were a matter of a good deal of public interest and excitement in Livingston County. The indictment was handed down on April 24, 1986, and the trial was held in the Circuit Court of Livingston County on December 15 and 16, 1986, resulting in the guilty verdict mentioned above.

Defendant on appeal says the trial judge erred in failing to disqualify himself and in failing to grant a change of venue from Livingston County upon defendant's motion. Defendant's first motion for the disqualification of the judge and for the change of venue was framed under Rules 32.03 (change of venue), 32.07 (change of judge) and 32.08 (combined change of judge and change of venue), which provide for a change of judge and change of venue as a matter of right simply upon application therefor. The court denied the applications on the ground that a copy of the motion and a notice of the time when the application would be heard had not been served upon the prosecuting attorney, as required by Rule 32.08. Each of the rules cited above contains the same provision: "A copy of the application and a notice of the time when it will be presented to the court shall be served on all parties."

The omission to serve "a copy of the application and a notice of the time when it will be presented to the court" upon the prosecuting attorney was properly held by the trial court to be fatal to defendant's absolute right to change of venue and change of judge. *State ex rel. Jackson v. Thompson,* 661 S.W.2d 677 (Mo.App.1983).

Defendant filed a second application for change of venue and change of judge for cause under Rule 32.09(c). That paragraph provides: "However, nothing contained in Rules 32.01 through 32.09, inclusive, shall prohibit a judge from ordering a change of venue or change of judge when fundamental fairness so requires."

The second application was not filed within 30 days after arraignment, as required by Rule 32.04(b) (change of venue),

and 32.07(c) (change of judge). The attorney general, citing *State v. Harris*, 670 S.W.2d 73 (Mo.App.1984), argues that this fact alone provides a sufficient basis for the trial court's denial of the second application.

■ Defendant maintains that the Rule 32.09(c), quoted above, overrides all procedural rules and that the court for reasons of "fundamental fairness" ought to have sustained the application. Assuming that defendant is right in his contention that tardiness of the filing was not fatal to his application, still the record does not convict the trial court of any abuse of discretion in denying the application. The motion alleges that from March through June 1986, twenty articles appeared in the Chillicothe Constitution–Tribune regarding grand jury indictments and arrests, five of such articles specifically mentioning defendant, and that two radio stations also broadcast similar stories, many of them mentioning defendant. There was no evidence of the content of such publications, and in the absence of any record we have no way of assessing the prejudicial effect, if any, of such publicity. Of course, the allegations of the motion do not prove themselves. *Peck v. Jadwin*, 704 S.W.2d 708, 711 (Mo. App.1986).

When the trial commenced on December 15, approximately six months after the publicity had ceased, only one member of the jury panel remembered hearing about the case, and that one said he had formed no opinion on the guilt or innocence of any particular person. This absence of any apparent knowledge of the case by any but one of the members of the jury panel bears out the correctness of the trial court's ruling on the application for change of venue.

■ For evidence of the trial judge's prejudice against the defendant, defendant points to the fact that defendant had earlier been sentenced by him on another charge to the maximum sentence for that crime—what the crime and what the sentence is not shown—and that in the present case the trial judge had set defendant's bond at $100,000 per count for two sales of marijuana and afterwards refused to reduce it on defendant's motion. In overruling defendant's motion to reduce bond, the court commented that he was "familiar with defendant's record". These facts, however, do not indicate any bias against the defendant on the judge's part which would prevent his giving defendant a fair trial. "Fundamental fairness" to defendant did not require the judge's disqualification, and there was no error in his denying such motion.

■ Defendant next assigns error in the court's refusal to disqualify the prosecuting attorney on the ground that the prosecuting attorney had been involved in the investigation and undercover operation which resulted in the prosecution.

The prosecuting attorney, Mr. Elliott, was directly involved with the undercover operation. He along with a Mr. Deister had made the initial arrangements with Kim Elletson to spy out the drug activity in Chillicothe. He was involved in some way in the payment of her agreed wages and expenses, but just what his role was is not defined in the record. Before making the January 15 purchase, Kim called Mr. Elliott to tell him where and when the buy was to take place. Mr. Elliott with a police officer surveilled the place and saw the defendant leave and return to the house. The marijuana which she purchased at that time she delivered to Mr. Elliott and Mr. Jesse King, the Chillicothe chief of police.

This involvement of the prosecuting attorney with the undercover operation did not disqualify him from conducting the prosecution. The case is ruled by *State v. McIntosh*, 333 S.W.2d 51 (Mo.1960). We quote from that case:

> A prosecuting attorney is expected to be zealous in the enforcement of the laws and in the prosecution of law violators, but, at the same time he must be fair with those who are charged with criminal offenses. It may be difficult at times to decide just where the line should be drawn between that which is proper and that which is improper. *In the present case, no fault can be found with the fact that the prosecuting attorney coop-*

*erated with the officers in the plan designed to catch the defendant in an unlawful sale of narcotics. His legal advice was apparently needed and it was his duty to advise the officers.* (Citation omitted). *The prosecuting attorney did not appear as a witness in the trial of the case and the evidence is insufficient to show any personal interest in the case comparable to the showing made in cases where disqualification has been required.* (Citations omitted). (Emphasis added).

*Id.,* at 58–59. The court did not err in overruling the motion to disqualify the prosecuting attorney.

■ Defendant claims he is entitled to a new trial for the misconduct of juror Stewart. There was an extensive evidentiary hearing on this juror misconduct allegation in the motion for a new trial. Juror Stewart upon voir dire examination had sat mute when the panel had been asked if anyone had "formed an opinion of this case up to this time", and when it had been asked "if anyone thinks that just because someone has been indicted that they're guilty of the crime". The evidence disclosed that a personal and business friend of Stewart's, Thomas Ashbrook, had been foreman of the grand jury which had returned the indictments including the indictment against defendant. Stewart had a brief casual conversation with Ashbrook about the grand jury's work, but it was couched in the most general terms. Ashbrook had disclosed to Stewart nothing learned in the grand jury investigation. No name of a person indicted was mentioned. It is not clear when this conversation was held—perhaps while the grand jury was conducting its investigation, before the indictments were made public, but apparently before Stewart had been summoned as a juror.

There was testimony that Stewart, after being summoned as a venireman, had said in effect that he would not finish the job that Ashbrook had started. Stewart denied this statement, however, and it was the trial court's prerogative to believe his denial.

Granting a new trial for juror misconduct is a matter left largely to the trial court's discretion. *State v. Potter,* 711 S.W.2d 539, 541 (Mo.App.1986). The evidence on this point by no means compelled the court to believe that Stewart on voir dire concealed a predisposition to convict the defendant, and he was well within his discretion in rejecting the claim of juror misconduct.

■ Defendant argues that the prosecuting attorney's closing argument was improper and inflammatory. The portion of the closing argument to which the defendant objects was this:

> When I ran for this office I said time and time again I thought it was time we focused or diverted our attention from the rights of criminals to the rights of victims. You're the victim; I'm the victim; we're the victims; society is the victim out there. Drugs are ruining this country. They're going to be the downfall of this country. Kids with ruined lives—

A defense objection at this point was overruled. Defendant's criticism of the argument is that "such argument implied to the jury special knowledge on behalf of the prosecuting attorney and was an attempt to arouse in the jurors personal hostility or fear of appellant."

We are unable to see where this argument implies some special knowledge on his part of facts not in evidence which caused him, the prosecutor, to have a personal belief in defendant's guilt, a line of argument which is condemned. *State v. Overkamp,* 646 S.W.2d 733, 737 (Mo.1983); *State v. Newlon,* 627 S.W.2d 606, 616–617 (Mo. banc 1982); *State v. Moore,* 428 S.W.2d 563, 565 (Mo.1968).

Neither did the argument offend against the principle that the prosecutor is not permitted in argument to attempt to arouse fear and personal hostility on the part of the jurors, a line of argument condemned by *State v. Raspberry,* 452 S.W.2d 169, 172 (Mo.1970); *State v. Heinrich,* 492 S.W.2d 109, 114 (Mo.App.1973); and many other cases. A prosecutor may discuss the prevalence of crime in the community, the per-

sonal safety of its inhabitants and the jury's duty to uphold the law. *State v. Newlon, supra; State v. Hobby*, 706 S.W. 2d 232, 234 (Mo.App.1986); *State v. Hubbard*, 659 S.W.2d 551, 558 (Mo.App.1983). On a matter of common knowledge like the prevalence of the sale and use of illicit drugs, the prosecutor could base an argument on that fact without record evidence of the fact.

Finally, defendant says the court erred in submitting to the jury MAI–CR 2d 1.02 and 2.20, which defined proof beyond a reasonable doubt as "proof that leaves you firmly convinced of the defendant's guilt". Defendant's argument has been considered and rejected by the Supreme Court of Missouri in *State v. Guinan*, 732 S.W.2d 174 (Mo.1987). The point is ruled against defendant.

The judgment is affirmed.

All concur.