**STATE of Missouri, Respondent,**

v.

**Joseph Albert KRIEBS, Appellant.**

**No. 21909.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 29, 1998.

Motion for Rehearing or Transfer
Denied Oct. 19, 1998.

Application for Transfer Denied
Nov. 24, 1998.

Roy W. Brown and Bruce B. Brown, Kearney, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for Respondent.

GARRISON, Chief Judge.

On May 22, 1996, Sheriff Wayne Spain of Dade County, Missouri, along with other officers, served a search warrant at the home of Joseph Albert Kriebs ("Appellant"). Sheriff Spain told Appellant that the officers had information that he was growing marijuana, to which Appellant replied either, "Yeah" or "Yes sir, I am." When asked if Appellant would show it to them, Appellant invited the officers into the house and took them to a bedroom where 482 plants were growing inside plastic tubs and styrofoam cups. Subsequent laboratory testing confirmed that the plants were marijuana containing THC. Appellant was tried and convicted of the Class B felony offense of producing marijuana, and of the Class C felony offense of possession of more than 35 grams of marijuana, in violation of §§ 195.211 and 195.202.[1] The jury assessed a prison term of fifteen and seven years respectively. Appellant's post-trial motions were overruled. Contrary to the jury's assessment of punishment, the trial court imposed two concurrent seven-year prison terms. On this appeal, Appellant contends that the trial court erred in admitting the marijuana into evidence over his objections; in overruling his objections, and failing to grant a mistrial, with regard to statements made by the prosecutor during closing argument; and in submitting both offenses to the

---

1. All statutory references are to RSMo 1994.

jury instead of submitting them in the alternative.

■ In his first point relied on, Appellant contends that the trial court erred by admitting the marijuana. His point raises a "chain of custody" issue in which he asserts that no sufficient chain of custody was established, because there was not a "reasonable assurance" that State's Exhibit 1, which contained the sample of marijuana tested by the crime lab, and State's Exhibit 2, which contained the bag of marijuana allegedly seized from his property, were in the same condition when tested as when recovered, or that they even comprised the plants that were seized from Appellant's house. In support, Appellant argues that: 1) the identification tags on the exhibits showed a date of seizure of April 22, 1996, but were subsequently altered to show the "true" date of May 22, 1996; 2) according to the identification tag on State's Exhibit 2, it had a weight of 66 lbs. before dry and 36 lbs. after dry, yet the lab technician measured the exhibit to weigh approximately 4.5 lbs.; 3) at least one plant in State's Exhibit 2 was taller and older than the ones allegedly seized from Appellant's home; 4) State's Exhibit 2 was said to contain 482 plants, while a witness claimed that the exhibit could contain no more than 300 plants; and 5) the identification tag on State's Exhibit 2 contained the words "outdoor grow," while the plants were seized from inside Appellant's home.[2]

■ The sufficiency of evidence establishing a chain of custody is a matter addressed to the sound discretion of the trial court. *State v. Murray*, 630 S.W.2d 577, 581 (Mo. banc 1982); *State v. Taylor*, 804 S.W.2d 59, 61 (Mo.App. W.D.1991). The trial court is in the best position to determine whether there has been improper tampering with an exhibit. *State v. Huff*, 789 S.W.2d 71, 78 (Mo.App. W.D.1990); *State v. Dudley*, 724 S.W.2d 517, 522 (Mo.App. W.D.1986). To receive testimony showing the results of tests performed on articles, the articles must

be in the same condition when tested as when originally obtained. *State v. Dunagan*, 772 S.W.2d 844, 856 (Mo.App. S.D.1989). There is no requirement that the State must account for hand-to-hand custody of the evidence from the time it is obtained to the time it is admitted at trial; rather it is sufficient if the evidence shows a "reasonable assurance" that the exhibit offered is the same and in like condition as when received, and that the exhibit offered has not been tampered with or contaminated. *Huff*, 789 S.W.2d at 78; *Dunagan*, 772 S.W.2d at 856.

At trial, Sheriff Spain testified that he personally seized the plants and placed them in a plastic bag; that he transported the plants and placed them in the evidence locker at the Dade County jail; that the items remained in the locker untouched with two exceptions: First, on September 18, 1996, he personally took a sample, placed it in a paper bag (Exhibit 1), transported it to the regional crime laboratory, and retrieved it after testing on October 11, 1996. Second, on February 28, 1997, he took the plastic bag of plants seized, transported it to the laboratory, and retrieved it after testing on March 8, 1997. He further testified that the plants remained in the evidence locker between the time of testing and trial, and that they had been in his control, care, and custody at all times except the time that they were at the laboratory. Additionally, the lab technician testified that he received the marijuana from Sheriff Spain, tested it, and returned it directly to the sheriff, and that the exhibits were in his custody during the testing periods.

■ The testimony of Sheriff Spain and the lab technician offers a "reasonable assurance" that State's Exhibits 1 and 2 were in like condition when tested as when received, and that they had not been tampered with or contaminated. Even if a proper chain of custody were not established, however, the exhibits were properly admitted because the chain of custody of physical evidence is irrel-

2. Appellant raised only the first of these five points in objection to the admission of the marijuana. The second and third points were argued by Appellant's attorney during closing argument, but were never articulated as grounds for keeping the marijuana out of evidence. The fourth and fifth points were not mentioned during trial at all; instead they were raised for the first time at a post-trial hearing on Appellant's motion for a judgment of acquittal or new trial.

evant where the exhibit is positively identified. *State v. Malone,* 694 S.W.2d 723, 727 (Mo. banc 1985); *State v. Ingram,* 607 S.W.2d 438, 441 (Mo.1980). *See also State v. Adkins,* 800 S.W.2d 28 (Mo.App. W.D.1990) (holding that where a trash bag of marijuana offered in evidence was positively identified as the evidence seized at the time of appellant's arrest, proof of chain of custody was unnecessary). In this case, Sheriff Spain positively identified both exhibits as the marijuana that he seized from Appellant's home.

Appellant asserts that the "broad" rulings of such cases as *Malone, Ingram,* and *Adkins* must have exceptions. In other words, he asserts that there must be exceptions to the rule that a positive identification of the evidence eliminates the need for establishing a sufficient chain of custody. In *Malone,* however, the Missouri Supreme Court stated that "any such weakness in identification was properly the subject of cross-examination, and was for the jury to consider in assessing the weight of the evidence." *Malone,* 694 S.W.2d at 727.

*State v. Vik,* 766 S.W.2d 641 (Mo.App. S.D.1989), is somewhat analogous to this case. In *Vik,* an officer seized a bag of marijuana from the defendant and placed it in an evidence locker. While doing so, he mislabelled the evidence tag. The officer inadvertently recorded "11–2–86" as the date, when in fact the bag was placed in the locker on 12–2–86. Thereafter, another officer removed the bag and took it to a crime lab for testing. He too mislabelled a report, showing the date that he took the evidence out of the locker as "12–1–86," instead of the true date of 12–3–86. The defendant asserted that the inconsistencies between the testimony of the two officers relative to the dates when the bag came into their possession, as well as the dates placed on the evidence tags and police reports, rendered the bag inadmissible for want of a proper foundation. The Court held that despite these inconsistencies, a proper chain of custody was established by the officers' testimony. In affirming the conviction and the admission of the bag of marijuana, the court stated:

While there was a conflict between the trial testimony [of the officers] as to when they took possession of the bag of marijuana, and the dates shown on the evidence tag and police reports as to when those events took place, the jury was entitled to hear, and accept if they chose, the two police officers' explanation as to how the mistakes occurred. It is evident from the verdict that the jury believed [the officers'] direct testimony, and that they accepted their explanation of the inconsistencies. They had a right to do so.

*Id.* at 643–44.

In this case, Sheriff Spain testified that he had incorrectly written a "4" instead of a "5," representing the month that the marijuana was seized. He further testified that when he discovered the error, he changed it to reflect the correct date. In light of the verdict, it is evident that the jury accepted this explanation. Furthermore, each of the other four "inconsistencies" was available to the jury for consideration in giving weight and credibility to the State's case. Specifically, the defense counsel argued during closing argument that a reasonable doubt existed with regard to Appellant's guilt, because the identification tag on State's Exhibit 2 revealed a weight before dry of 66 lbs. and a weight after dry of 36 lbs., while the lab technician measured the exhibit to weigh approximately 4.5 lbs. He further pointed out to the jury that at least one plant in State's Exhibit 2 was taller and older than the ones allegedly seized from Appellant's home. Finally, the words "outdoor grow" that were shown on the identification tag of Exhibit 2 were clearly visible to the jury, and the jury could have observed Exhibit 2 and the plants that it contained.

This court finds that all five "inconsistencies" which Appellant complains about were possible "weaknesses" for the jury to have considered in giving weight and credibility to the exhibits. Such "inconsistencies" go to the weight to be accorded to the evidence, not its admissibility. A sufficient foundation was laid for the introduction of Exhibits 1 and 2 (i.e., the seized marijuana).[3] Appellant's first point is denied.

3. Appellant contends that because a proper foun-     dation was not laid for the introduction of the

■ In his second point, Appellant contends that the trial court erred when it overruled his objections, and failed to grant a mistrial, with regard to statements made by the prosecutor during closing argument. Specifically, Appellant complains about the prosecutor's statements that the jury should convict Appellant and impose the maximum sentences to "protect our children" and because "our children are the victims." Appellant argues that these statements were improper because they were not based on anything in the record or the reasonable inferences to be drawn therefrom; rather the prosecutor intended to make an inflammatory appeal to the jurors to arouse their personal hostility toward Appellant.

During closing argument, the following occurred:

[Prosecution]: Thank you, I [sic] please the Court. Ladies and gentlemen, there's a war out there. There's a war out there in our streets and our schools and our parks. There's a war *and our children are the victims.* This war is the war against drugs. There [sic] a lot of people that say this war can't be won.

[Defense]: May we approach, Your Honor[?]

[Court]: You may.

[A side-bar conference started]

[Defense]: I know that the prosecutor has a right, of course, to ask the jury to consider the general public, but this kind of argument is—is just without the bounds of proper prosecutorial statements.

* * *

It's beyond. I mean, *it's very prejudicial*, and it's beyond appropriate argument.

[Court]: Well, I'm going to overrule your objection. The state's going to have to take their chances if they go too far.

(Emphasis added).

At this point, defense counsel made a record of both his objection to the statements and request for a mistrial. The trial court denied both, but recognized a "continuing" objection on behalf of the defense to any such further argument. The prosecution's argument continued:

[Prosecution]: Ladies and gentlemen, I submit to you that this war can be fought one small battle at that [sic] time. The battle in this courtroom here today is State of Missouri versus Joseph Kriebs. This battle in this courtroom is very important to the citizens of Dade County. *It's important for our children. It's important to our lives and our homes.*

Part of the battle has been won here. 482 marijuana plants are off the streets. We have seized that and kept it out of the hands of people who would smoke it to get high.

Today is the second part of this battle. This is your chance as Dade County citizens to send a message: *We don't like marijuana growers. We won't tolerate it in Dade County. We will protect our children.* Most importantly, those of you that determine to engage in illegal activity with drugs, you do the crime, you do the time.

* * *

[Prosecution]: Now the most important. You will have two roles in the back room. One, you'll decide whether [Appellant] is guilty or not guilty of these two counts. If you find him guilty, we will assess his punishment. And ladies and gentlemen, I'm going to suggest to you—this is your decision; ... that you put [the maximum]....

Now, ladies and gentlemen, you may be sitting there wondering, why is she asking for the maximum? I'll tell you why. The most alarming piece of evidence in this case came through the testimony of [the sheriff], and what he said the defendant told him on the way to the jail: I don't grow it to use it, I grow it to sell. I want you to think about that. Who

---

exhibits into evidence, the lab technician should not have been permitted to testify about the positive results of the testing (i.e., that the plants contained THC), and therefore, the State failed to prove that the plants seized were "marijuana" as defined by Missouri law. Because this court holds that the exhibits were admissible, this portion of his point is now moot.

was he going to sell it to? And I do—that's why I'm asking for the maximum. (Emphasis added).

Broad discretion rests with the trial court in controlling closing argument. *State v. McDonald,* 661 S.W.2d 497, 506 (Mo. banc 1983), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). Unless that discretion has been clearly abused to the prejudice of the accused, the trial court's ruling should not be disturbed on appeal, *State v. Davis,* 653 S.W.2d 167, 176 (Mo. banc 1983), as the trial court is best able to assess the prejudicial effect of the prosecutor's statements. *State v. Vitale,* 801 S.W.2d 451, 457 (Mo.App. E.D.1990). To find an abuse of discretion, the prosecutor's statements must be "plainly unwarranted." *McDonald,* 661 S.W.2d at 506.

We are not directed to any evidence in the record demonstrating that Appellant actually sold, or intended to sell, drugs to children. It has been held that an abuse of discretion can occur where the trial court allows an attorney to argue matters not in evidence, or to otherwise misstate or pervert the evidence. *State v. Fuhr,* 660 S.W.2d 443, 448 (Mo.App. W.D.1983). However, a trial court may allow an attorney to draw nonevidentiary conclusions as long as those conclusions can be fairly justified as inferences from the evidence. *Id.* A prosecutor can draw an inference from the evidence that he or she believes in good faith to be justified. *State v. Harris,* 824 S.W.2d 111, 115 (Mo.App. E.D.1992). Furthermore, the State is permitted to argue such propositions as the prevalence of crime in the community and the personal safety of its inhabitants. *State v. Clemmons,* 753 S.W.2d 901, 909 (Mo. banc 1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Such pleas may call upon common experience. *Id.* The State may also argue that conviction of the defendant is part of the jury's duty to prevent crime. *State v. Plummer,* 860 S.W.2d 340, 350 (Mo.App. E.D.1993). The prosecutor may refer to the need for strong law enforcement as a deterrent to crime and infer the effect of the jury's failure to perform its duty and uphold the law. *Id.* The prosecutor may not, however, make an inflammatory appeal to the jurors to arouse their personal hostility toward or personal fear of the defendant, *such as implanting in their minds the fear that the defendant's acquittal will endanger their own personal safety or that of one of their family members. Id.* (emphasis added)*; State v. Evans,* 406 S.W.2d 612, 616–17 (Mo.1966); *State v. Steward,* 564 S.W.2d 95, 98–99 (Mo.App. E.D. 1978); *State v. Heinrich,* 492 S.W.2d 109, 114 (Mo.App. W.D.1973).

Missouri courts have dealt with similar issues on a number of occasions, but with varying results. For instance, in *State v. Sumlin,* 915 S.W.2d 366 (Mo.App. S.D.1996), the prosecutor stated in closing argument:

You see every day some drug transaction or something taking place, and you say that's somewhere else. I can't do anything about that. Have you ever felt like you needed to do something to protect your children, your grandchildren? What can you do about it? Today is your opportunity. Today is the day that you can do something about it. There is something you can do.

*Id.* at 368. The court noted that "the query about whether the jury had ever wanted to do something to protect their children and grandchildren was improper." *Id.* at 370. *See State v. Raspberry,* 452 S.W.2d 169 (Mo. 1970) (stating that the prosecutor's statements during closing argument were improper where he stated, "Let's put a stop to it [the alleged crime]. Not for a feather in my cap; for the sake of your children, and for your wives, and for your families, for the sake of the people of the community"); *State v. Groves,* 295 S.W.2d 169 (Mo.1956) (holding that the prosecutor's statement concerning the safety of jurors' daughters/granddaughters should the defendant go free constituted reversible error); *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524 (Mo. banc 1947).

On the other hand, in *State v. Hatcher,* 835 S.W.2d 340 (Mo.App. W.D.1992), the prosecutor stated in closing argument:

. . . I would ask you to convict this defendant and show the people that we don't want to tolerate cocaine in our community, that we don't want our families exposed to

this kind of thing. We don't want our children growing up with cocaine....

*Id.* at 344. The court stated that the prosecutor's argument was not of the character condemned, because it was not an argument that suggested personal danger to the jurors or their families; rather it was a permissible argument that merely argued the necessity for law enforcement, the prevalence of crime in the community, the personal safety of its inhabitants, and the duty of the jury to convict the defendant to prevent crime. *Id.* (citing *State v. Holt,* 660 S.W.2d 735, 738 (Mo.App. E.D.1983). *See State v. Williams,* 747 S.W.2d 635, 638 (Mo.App. W.D.1988) (stating that the prosecutor's closing argument did not impermissibly arouse fear and personal hostility on the part of the jurors where the prosecutor argued: "Drugs are ruining this country. They're going to be the downfall of this country. Kids with ruined lives ...."). *See also State v. Olds,* 603 S.W.2d 501 (Mo. banc 1980); *State v. Fletcher,* 244 S.W.2d 98 (Mo.1951).

Here, the argument complained of did not refer specifically to the jurors' children. It was, therefore, more consistent with the arguments in cases such as *Hatcher, Holt,* and *Williams.* Additionally, in light of the strong evidence of guilt and the trial court's deviation from the sentence recommendation given by the jury, no prejudice resulted to Appellant.

▎Error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong. *State v. Degraffenreid,* 477 S.W.2d 57, 65 (Mo. banc 1972). In this case, the evidence of guilt was sufficiently strong. There was evidence that when Sheriff Spain served the search warrant, Appellant acknowledged that he was growing marijuana; that Appellant led the officers to the 482 plants in his house; that Sheriff Spain seized the plants; that Appellant told Sheriff Spain that neither he nor his wife used marijuana, but "he was just using it to sell"; that the contents of the plants were tested and determined to be marijuana containing THC.

▎Of course, improper statements made during closing argument can taint the jury's assessment of punishment as well as guilt. In *State v. Long,* 684 S.W.2d 361, 366 (Mo.App. E.D.1984), the court stated in its holding:

It cannot be said as a matter of law that this [prosecutor's] argument was not prejudicial to the defendant in the jury's deliberations, verdict and assessment of punishment *where the assessment was adopted by the court in sentencing.* (Emphasis added.)

In this case, however, the trial judge did not adopt the jury's assessment of punishment; instead he sentenced Appellant to a much lesser term of imprisonment. While the jury assessed punishment of fifteen years on the production charge and seven years on the possession charge with fines to be assessed by the court, the trial judge sentenced Appellant to seven years on each count, to run concurrently. Thus, if the jury was prejudiced by the prosecutor's closing argument with regard to assessing punishment, the judge cured such prejudice by sentencing Appellant to a substantially lesser sentence than the jury's assessment.[4] By doing so, we hold that the trial court removed any prejudice Appellant may have suffered by such argument, even if it were improper. Accordingly, Appellant's Point II is denied.

▎In his third point, Appellant contends that he cannot be convicted for both possession of marijuana in violation of § 195.202, and producing marijuana in violation of § 195.211, because Missouri's general cumulative punishment statute, § 556.041, prohibits the conviction of more than one

---

4. During Appellant's sentencing hearing, the trial judge said the following:

Sometimes—it's hard to predict what a jury will do.... And I guess, technically, legally, I could and can sentence you under this up to anything up to what they do. I could sentence you to seven years on Count I, 15 years on Count II, run them consecutively.... I know that on a plea, it certainly wouldn't have been this [sentence]. I'll have to admit to myself, I was surprised. I was surprised of seven and fifteen. You know, I read it and that's what it said. So that leaves it always down to—it gets down to the Court, what do I do.... I'm going to show a term of seven years on Count I, I'm going to show seven years on Count II, and I'm going to run them concurrently together.

offense when the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other prohibits a specific instance of such conduct.

Missouri law is abundantly clear that prosecution under both §§ 195.202 (possession of marijuana in excess of 35 grams) and 195.211 (production of a controlled substance in excess of 5 grams) does not violate "double jeopardy" in the sense that the one is not a lesser included offense of the other. *See State v. McIntire*, 813 S.W.2d 97, 99 (Mo. App. S.D.1991); *State v. Brown*, 750 S.W.2d 139, 142 (Mo.App. E.D.1988) (stating that each offense requires proof of an essential fact not required by the other—possession consists of having knowledge of the presence and nature of the controlled substance, and [producing] consists of promoting the growth of the plant and having an awareness of the plant's character). Appellant complains, however, that his conviction is unlawful because the charge of possessing marijuana generally prohibits a designated kind of conduct, while the charge of producing marijuana prohibits a specific instance of such conduct.

A defendant may be convicted in one proceeding of more than one offense based on the same conduct if the legislature intends to punish the conduct under more than one statute. *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992). To determine whether the legislature intended multiple punishments for the "same conduct," we look first to the statutes under which the defendant was convicted. *Id.* at 187; *State v. Davis*, 849 S.W.2d 34, 42 (Mo.App. W.D. 1993). Where, as here, the statutes are silent, recourse must be made to Missouri's general cumulative punishment statute, § 556.041. *McTush*, 827 S.W.2d at 187; *Davis*, 849 S.W.2d at 42.

Section 556.041 states:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

... (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the oth-

er to prohibit a specific instance of such conduct; ...

We have not been cited to authority directly deciding this issue, and our own research has revealed none. In a comparable case, however, *State v. Villa–Perez*, 835 S.W.2d 897, 903 (Mo. banc 1992), the Missouri Supreme Court said that the general/specific conduct distinction was not an exception under which the defendant "could arguably obtain relief." In *Villa–Perez*, the defendant was arrested for driving a vehicle containing 284 pounds of marijuana. The defendant was thereafter convicted of transporting marijuana in violation of § 195.025 and possessing more than 35 grams of marijuana in violation of § 195.020. While discussing a question of lesser included offenses under § 556.041(1), the Court stated, "The only exception contained within § 556.041 under which the defendant could arguably obtain relief is § 556.041(1), the included offense exception." *Id.* at 903. Thus by necessary implication, the Court held that § 556.041(3) offered no relief to the defendant in that case.

Although the *Villa–Perez* case involved possession of and *transporting* marijuana, we find the circumstances in this case to be substantially similar. There, as here, the defendant was convicted of both crimes based on the same marijuana plants. In *Villa–Perez*, the prosecution used the same marijuana plants that were confiscated from the defendant to support the crime of possession as well as transporting. Here, the prosecution used the same marijuana plants confiscated from Appellant to support both the crimes of possession and production. Nevertheless, in *Villa–Perez*, the Missouri Supreme Court did not find that § 556.041(3) offered relief to the defendant in such a case. If transporting marijuana is not considered a specific instance of the general conduct of possessing such marijuana, it would seem that producing marijuana would not be considered a specific instance of possessing such marijuana. If possession of marijuana served as a general umbrella encompassing production of marijuana, it would likely encompass transporting marijuana as well. Accordingly, we hold that Appellant's convic-

469

tions under both statutes were proper and his third point is therefore denied.

Judgment is affirmed.

SHRUM, P.J., and BARNEY, J.,concur.