STATE of Missouri, Plaintiff–
Respondent,

v.

Anthony J. NETTLES, Defendant–
Appellant.

No. 27362.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 20, 2006.

Motion for Rehearing or Transfer
Denied Dec. 12, 2006.

---

Irene C. Karns, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victor J. Melenbrink, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Anthony Nettles ("Appellant") was charged with the class B felony of trafficking in the second degree pursuant to section 195.223.[1] The information was later amended to charge Appellant as a prior offender under section 558.016. Appellant was found guilty of drug trafficking in the second degree and sentenced as a prior offender to twelve years imprisonment.

He claims four trial court errors in the admission of evidence. We find no error and affirm the conviction.

A Missouri State Highway Patrol trooper, Matt Funderburk, observed Appellant's vehicle exceeding the speed limit on eastbound Interstate 44. When he initiated a traffic stop, he noted that Appellant was driving a rental car from Indiana and claimed to be returning to Indiana from Texas. Appellant said he was taking his girlfriend to college in Texas but could not recall the name of the town. The trooper observed two cell phones, a radar detector, an opened road map, and a pillow, all of which he believed could indicate drug activity. He requested that Appellant come back and sit in the patrol car while he wrote out a warning for the speeding violation; however, he learned that Appellant had an extensive criminal record, was on probation, and did not have his probation officer's permission to be out of the State of Indiana.

After writing out the warning, the trooper decided to ask more questions of the passenger, who gave inconsistent responses to the same questions that had been asked of Appellant. Trooper Funderburk requested permission from Appellant to search the car and Appellant consented. The trooper found a bottle of Inositol, a vitamin supplement often used to cut cocaine or methamphetamine, in the trunk; he also found a gallon-sized plastic baggie of white powder inside a Kentucky Fried Chicken bag in the glove compartment.

After Trooper Funderburk returned to the cruiser, he arrested Appellant and gave him the Miranda warning.[2] He then asked Appellant if the substance in the baggie was cocaine or methamphetamine.

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. *Miranda v. Arizona,* 384 U.S. 436, 467–73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant said it was "coke." Appellant refused to sign the waiver form when the Miranda rights were again read to him at troop headquarters, but he told the trooper that he knew he was in trouble. During the inventory search at headquarters, $2400 was found in the vehicle. Before placing the goods in the evidence locker, Trooper Funderburk weighed the plastic baggie on uncertified scales to approximate the weight of its contents. It weighed out at approximately a pound, or approximately 450 grams. Another trooper, Daniel Banasik, performed a preliminary narcotics field-test on the powder and testified at trial that it showed a "positive response for the presence of cocaine."

The contents of the plastic bag were later tested at the Missouri State Highway Patrol Laboratory in Greene County, Missouri, on November 7, 2003, by criminalist Matthew Barb. The substance was determined to contain cocaine salt and weighed 490.47 grams. The street value would be approximately $49,300. Barb left the employment of the Highway Patrol in May 2004 amid suspicions that he was addicted to methamphetamine and that he had taken drugs from samples assigned to the laboratory. His supervisor, Kay Monk, testified at trial that she reviewed Barb's report in Appellant's case and found no irregularities. A second criminalist, Kristin Weiss, repeated the tests Barb had performed. She confirmed that the substances contained cocaine salt and noted the weight at 493.67 grams; she explained that the .65% difference in weight could be a failure of Barb to completely scrape all of the powder out of the plastic bag.

■ Appellant first claims on appeal that the trial court plainly erred in permitting Trooper Banasik to testify that the field-test he performed on the baggie of white powder was positive for cocaine. Prior to the statements given at trial, the

trial court denied a motion in limine that the trooper could not testify regarding the field-test he conducted on the substance. The court stated:

> Well, you're right that it doesn't prove it's cocaine and that's why they do the final test, but because there's going to be an issue about whether this is the same evidence or not, it goes toward, like you said, if it was negative, then we would not even be at trial here.

The trial court continued that the field-test result was admissible:

> I think it's admissible, it goes to weight, but I'm not going to let them testify, yes, this is positive for cocaine because that's not what it does. And if, you know, if they try and do that, you can clear them up on cross-examination because it's just a screening test and I think that will be all clear to the jury but I think it is admissible that they took it and it reacted and you can go into the possible ranges of things it could react to.

Appellant now argues that the field-test was not conclusive as to the presence of cocaine and, therefore, more prejudicial than probative and unduly influenced the jury when Appellant was contesting the validity of tests later performed by lab personnel.

■ Appellant asks for plain error review. We note that Appellant was granted a continuing objection to the admission of the field-testing. We are at a loss to understand the request of a plain error review; however, we find no error, plain or otherwise. We find no error because the testimony was cumulative of properly-admitted evidence. There is no prejudice to Appellant and no reversible error when other evidence before the court establishes essentially the same facts. *State v. Bucklew,* 973 S.W.2d 83, 93 (Mo. banc 1998). When Appellant was asked by Trooper

Funderburk if the substance in the baggie was cocaine or methamphetamine, he said it was "coke." There was also testimony from Monk that the original testing, which she supervised, was positive for cocaine. A second criminalist, Weiss, tested the powder and also concluded the substance was cocaine. Appellant does not claim error with the admission of his statement that the powder was "coke." Although Appellant does contest the admission of testimony by Monk and Weiss in Points III and IV, we find no error in the admission of their testimony. Therefore, it is cumulative in that other properly-admitted evidence established the substance was cocaine.

Furthermore, the trial court correctly noted that there was an issue at trial whether the powder had been tampered with. (See Points III and IV.) The initial test results, whether positive for cocaine or a controlled substance, indicate a substance other than a legal substance was in the baggie. The court stated:

What I thought I remembered from the motion in limine is that everybody knows Barb is going to be spoken about. He was the original chemist that tested this. What I excluded was the fact that all these other cases had been dismissed. We may have to get the written motion out again or even look at the notes of the court reporter, but it was kind of the parameters, as [the prosecutor] said, about what would be asked about Barb, not that it wouldn't be mentioned. I assumed all along that, you know, they've got a guy that tested it, he's not here. They're not presenting him. You know, it's going to be an issue, they have to get somebody else in.

But, I mean, field-testing, forget Barb. I'd allow the field-testing in if there wasn't a Barb issue. I mean it's just one more point of showing what

happened, what occurred. It's not prejudicial. It could be explained by other chemicals other than cocaine. You-all can point that out. I mean they still have to prove it's cocaine and it's the cocaine that they seized from the guy.

So, I mean I'd let the field-testing in, you know, if there wasn't an issue about who finally tested the drugs. So I don't see the point of why that's any different than any other case. And they'll do the same sorts of screenings there. I let that in before they testify as to what their final test was. That's just one more way they narrow down what they're looking for.

So at this point that objection as to the field-test will be overruled. I will let him testify about that.

Furthermore, Officer Banasik was cross-examined about the substance. He testified: "That—the field-test is just an initial test to give us some guidance to make sure it is a controlled substance, and we send it to the lab for the—basically for a chemist or for a professional to tell us that's what it is." There was no error in allowing Officer Banasik's testimony as to the results of the field-test. Point I is denied.

▮ For the same reason, Appellant's Point II is denied. Appellant claims in Point II that the court plainly erred in admitting the report of Barb and the testimony related to the report because the report was hearsay. There was no objection to the report and testimony at trial; therefore, we review for plain error and find none. To obtain plain error review, the claim must affect a substantial right that results in manifest injustice or a miscarriage of justice. *State v. Smith*, 979 S.W.2d 215, 217 (Mo.App. S.D.1998). Furthermore, Appellant bears the burden of demonstrating manifest injustice. *Id.* We find no manifest injustice or a miscarriage of justice as the question and answer were cumulative of other significant trial testi-

mony. We do not address the issue of whether the report was hearsay because we find no prejudice. The substance in the bag tested positive for cocaine in Weiss's second test and Appellant testified that it was cocaine, thus making the testimony and report of Barb cumulative. Again, there is no prejudice to Appellant and no reversible error when other evidence essentially establishes the same facts. *Bucklew,* 973 S.W.2d at 93. Point II is denied.

Next, in Points III and IV, Appellant complains that the testing results were improperly admitted as the prosecutor failed to lay a foundation as to the chain of custody. Appellant challenges Barb's lab report, Monk's testimony, Weiss's report, and Weiss's testimony. His specific complaint concerning the chain of custody was the time period after the bag of powder was removed from the lab's evidence locker for testing by Barb. Appellant notes the difference in weight entered on Barb's report and the weight when it was re-tested two years later by Weiss. He claims the court could not be reasonably assured that no one tampered with the bag because the change in weight strongly implied that the powder had been altered.

We review the trial court's determination of the sufficiency of the evidence necessary to establish a valid chain of custody for an abuse of discretion. *State v. Link,* 25 S.W.3d 136, 146 (Mo. banc 2000). We do not find the trial court abused its discretion in admitting the report of Barb and the testimony of Monk. The trial court was in the best position to determine whether there had been improper tampering with an exhibit. *State v. Kriebs,* 978 S.W.2d 460, 463 (Mo.App. S.D.1998).

There is no requirement that the State must account for hand-to-hand custody of the evidence from the time it is obtained to the time it is admitted at trial; rather it is sufficient if the evidence shows a "reasonable assurance" that the exhibit offered is the same and in like condition as when received, and that the exhibit offered has not been tampered with or contaminated. *Id.*

The powder was out of the evidence locker from October 18, 2001, until November 20, 2001, when the testing was completed by Barb. During that time, the bag was in Barb's possession. Barb had initialed the baggie upon opening and re-sealing it, as well as marking the date and a laboratory control number before returning them to the locker. Barb's supervisor approved his report, but did not observe the actual testing. Although Appellant notes the difference in the weight of the powder and the fact that Barb left the employment of the crime lab under suspicion of drug addiction to support his claim of a lack of foundation, he does not show the difference in weight supports his claim that the powder was not cocaine. Prior to the tests done by Barb and Weiss, Appellant admitted the substance was "coke" and Trooper Banasik's field-test was positive for a controlled substance.

The trial court did not abuse its discretion in admitting the evidence as there was a reasonable assurance as to the chain of custody and other evidence indicating the presence of cocaine. The jury was then given the opportunity to take all of the facts into account when determining how much weight to give the results of the lab testing and the testimony. Points III and IV are denied.

The conviction is affirmed.

PARRISH, J., SCOTT, J., concur.