STATE of Missouri, Plaintiff–Respondent,

v.

Eddie Wayne COOK, Defendant–Appellant.

No. SD 31487.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 1, 2012.

Emmett D. Queener, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Robert J. Bartholomew, Jr., Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

Eddie Wayne Cook ("Defendant") appeals his convictions and resulting consecutive fourteen-year sentences received after a jury found him guilty of first-degree statutory rape and first-degree statutory sodomy (see sections 566.032 and 566.062).[1] Because Defendant did not include the allegation of error he now asserts in his

---

1. All statutory references are to RSMo Cum. Supp.2011. All rule references are to Missouri Court Rules (2012).

motion for new trial, he seeks plain error review of his claim that the trial court's refusal to give a limiting instruction after the victim's boyfriend testified about what the victim had said to him and "the State's reference to [that testimony] in closing argument could have permitted the jurors to consider the statement as substantive evidence that [Defendant] committed the offenses charged, resulting in manifest injustice." Finding no plain error, we affirm.

## Applicable Principles of Review

An allegation of error in a jury-tried case that does not challenge the jurisdiction of the court, the sufficiency of the charge, or the sufficiency of the evidence must be preserved in a motion for new trial. Rule 29.11(d); *State v. Tanner*, 220 S.W.3d 880, 883–84 (Mo.App. S.D. 2007). When the alleged error has not been properly preserved, we may review the claim under Rule 30.20 for plain error concerning a substantial right that results in a manifest injustice or miscarriage of justice. *State v. Bescher*, 247 S.W.3d 135, 140 (Mo.App. S.D.2008). Plain error is error that is evident, obvious, and clear. *State v. Shaffer*, 251 S.W.3d 356, 358 (Mo. App. S.D.2008). "[P]lain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative[.]" *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002). "In the absence of an error of this magnitude, no manifest injustice or miscarriage of justice exists and the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20." *Shaffer*, 251 S.W.3d at 358.

## Facts and Procedural Background

The following facts relevant to Defendant's point are presented in the light most favorable to the verdict. *State v. Eoff*, 193 S.W.3d 366, 368 (Mo.App. S.D. 2006). During Defendant's April 2011 trial, Justin Albright testified that he started a relationship with S.K. ("Victim") in the summer of 2009. At that time, Victim was 13 years old and Albright was 19. They "ended up having sex." On the day after the last time Albright "ha[d] sex" with Victim, in August 2009, Albright was contacted and interviewed by an officer with the Humansville Police Department. Albright admitted to the interviewing officer that he had engaged in sexual behavior with Victim, actions for which he later pleaded guilty to statutory rape in the first degree pursuant to a plea agreement.

At Defendant's trial, the State asked Albright whether he told the officer anything else during that interview. Defense counsel objected, and the following exchange took place outside the presence of the jury:

> [Defense counsel]: Precisely the point that I was objecting to earlier[2], this is where all the hearsay statements are going to come in.
>
> [Prosecutor]:It's not being offered for the truth of what was said. It's being offered to say why [Albright] told

2. Before the trial began, defense counsel objected to Albright testifying because, *inter alia*, his knowledge was based on hearsay. The prosecutor responded that Defendant brought up the issue of Albright "last time"—a reference to the fact that a January 2011 trial of the case had resulted in a mistrial—and the State wanted to address the issue "up front this time[.]" Defense counsel moved *in limine* that Albright not be mentioned in opening statement and that defense counsel be permitted to *voir dire* Albright "prior to the direct examination to determine his basis of knowledge or lack thereof." The trial court overruled the motion *in limine* but indicated that, depending upon the questions asked by the State, defense counsel might then request and receive permission to *voir dire* the witness.

what he told the officer. That's all it is, is that [Albright] told the officer that [Victim] said this.

THE COURT: And for what purpose? To explain the officer's behavior? Or what—for what purpose?

[Prosecutor]: Yeah. It'll explain the officer's behavior. It'll also explain that [Defense Counsel], in his opening, when he said that [Victim] brought this up.[3] It wasn't [Victim] bringing it up after she was caught. This was brought up by Mr.—by [Albright] at that point in time.

THE COURT: All right.

[Defense Counsel]: Your Honor, I would then ask if the [c]ourt is going to overrule my objection based on hearsay because [the prosecutor is] claiming that it's going to explain the officer's subsequent conduct, I would ask for a limiting—an order liming [sic] him to say based upon—that it be limited that the question be you told [the officer] what [Victim] told you because of [sic] those specifics are not relevant to the officer's subsequent actions.

[Prosecutor]: [Defense Counsel] made a point when he said she made this up after she got caught, that he [sic] made it up at that point. That's where it comes in at.

THE COURT: Yeah, I'm going to overrule your objection. I don't quite—I don't—But I want to know what you can tell me about the limiting—I don't know what to—

[Defense Counsel]: Well—

THE COURT:—how I'm going to limit. I don't know what relief you want.

[Defense Counsel]: Your Honor, the danger—if this witness says what [Victim] says all this happened, the danger is the jury is going to accept that as substantive evidence, even though [the prosecutor] is saying he's not offering it for that. And so, I would like some kind of limiting instruction to the jury that they are not to use this hearsay testimony as evidence that it happened.

THE COURT: Well, I think they can consider it in terms of evidence as that's what he said she said. I mean in terms of—And that's why the officer acted a certain way. That's what you're suggesting?

[Prosecutor]: Right. And then [Victim] will be on the stand, so she—if there's other questions he wants to question her about what she told [Albright], she'll be here to testify.

THE COURT: I'm going to overrule the objection.

Albright then testified that he "told the officer that [Victim] had told [him] that she had been having sex with her stepdad." Albright also testified on direct examination that Victim told him this information "after the second time that we had sex." Defense counsel then emphasized the testimony when he cross-examined Albright as follows:

Q. Okay. And your testimony is that it was after having sex the second time that [Victim] claims she was having sex with her stepfather as well?

A. Yes.

---

**3.** In its opening statement, the State said that Albright would be called as a witness. The State asserted that Albright "also had sex with [Victim,] ... [and] he will explain ... what happened when the police came and talked to him." Defense counsel stated in opening that Defendant would tell the jury about contacting the police about Victim's contacts with Albright and "how he learned that [Victim] had all of a sudden raised the claim that he had been having sexual acts with [Victim] for the past year and a half."

Victim testified at trial and was subjected to cross-examination. She testified that Defendant—her mother's boyfriend—had lived with her, her mother, and her younger sibling since Victim was in the second grade. She "called [Defendant] stepdad." Between July 28, 2008 and August 26, 2009, Defendant had oral, anal, and vaginal sex with her at their home on more than one occasion. Defendant last had vaginal sex with her on August 26, 2009. Victim was 13 years old in August 2009. Defendant told Victim that she should not tell anyone about their sexual activities and that if she did, "[she would] be taken away from [her] family to a place with white walls no one knows [sic] where no one could hear [her] scream."

Victim testified that she became acquainted with Albright in the summer of 2009, and she had sex with him in August 2009. During the time period in which she was having sex with Albright, she told Albright that she was "having sex" with Defendant. Victim recalled that Defendant confronted her about Albright on August 26, 2009, and "the cops got called to go get [Albright]" that same day. Victim was interviewed by the police the following day. When one of the officers asked Victim if she was having sex with Defendant, Victim told them, "Yes." She also told the officers about her sexual activities with Albright. Victim then went to her home "[t]o help the police find evidence" and showed them certain items in the home, including a towel she and Defendant used to "clean up" after having sex.

Ronald McNew, a Humansville police officer at the time, questioned Albright on August 27, 2009. Albright admitted to officer McNew that he had been having sex with Victim. Officer McNew testified, without objection, that it was Albright who told him that Defendant and Victim had also been engaging in sexual activity.

Humansville Police Chief Darrell Lean testified, without objection, that he followed up on information he received from Officer McNew about McNew's interview with Albright. That information included Albright's statement that Victim "was sexually active with her stepdad." Chief Lean testified about his interview of Victim, that he obtained DNA samples from Victim and Defendant, and how he provided the DNA samples and other evidence, including the towel collected from Victim's home, to the Missouri Highway Patrol Crime Lab for analysis.

Rachel Lovelace, a criminalist at the crime lab, testified that she analyzed a stain located on the towel (received into evidence as State's Exhibit No. 4) that she had been given. A DNA profile was developed from sperm present in the stain. That profile was consistent with the profile developed from the DNA sample obtained from Defendant. Lovelace also testified that DNA profiles of both Victim and Defendant could not be eliminated from another portion of the stain, "a non-sperm faction" or "mixture profile," that contained contributions from at least two different individuals.

Defendant testified in his own defense. He denied engaging in any sexual activity with Victim.

In its closing argument, the State told the jury, without objection by Defendant, that when Albright was "questioned by the police, [he] told the police what [Victim had] told him. He told the police that [Victim] told him about having sex with [Defendant]." The prosecutor also stated (without objection) that officer McNew relayed "the same testimony about what [Albright] had told him[.]" After deliberations, the jury found Defendant guilty of statutory rape in the first degree and statutory sodomy in the first degree.

### Analysis

Defendant concedes that his allegation of error is subject only to plain error review. He also concedes that Albright's "testimony was admissible to explain how [Defendant's] name came up in the investigation, and it went to the timing of the allegations as well." *Cf. State v. Simmons*, 233 S.W.3d 235, 238 (Mo.App. E.D. 2007) (officer's testimony regarding victim's statements was relevant to explain the progression of the investigation); *State v. Williams*, 353 S.W.3d 685, 689 (Mo.App. W.D.2011) (consistent statement to detective admissible to rebut claim that other witness's trial testimony was contrived). But Defendant maintains that admitting the evidence for only these purposes "is pointless if the jurors are not made aware of the legitimate use for which the trial court admitted the evidence." He asserts that the discussion with the trial court over this issue "was clear-cut and the appropriate action by the [trial] court was equally clear."[4] Defendant claims that "*if*

the jurors improperly considered [Victim's] hearsay statements through [Albright's] testimony as truth of the matter asserted," then the verdict rested "at least in part, [on] improperly admitted bolstering evidence." (Emphasis ours.)[5]

The State responds by claiming that there was no plain error in failing to give the limiting instruction sought by Defendant and that he suffered no prejudice, "much less manifest injustice," from the admission of the evidence at issue because "[Victim] testified directly concerning the matters she told [Albright] and was subject to cross-examination." We agree.

First, the testimony about which Defendant complains was not inadmissible hearsay; it was not offered to prove the truth of the matter asserted. Even if it had been hearsay, "[p]rejudice will not be found from the admission of hearsay testimony where the declarant was also a witness at trial, testified on the same matter,

---

4. Defendant cites *State v. Washington*, 260 S.W.3d 875, 879–80 (Mo.App. E.D.2008), and *State v. Tripp*, 168 S.W.3d 667, 679 (Mo.App. W.D.2005), as instances in which the reviewing court found no plain error in the admission of an out-of-court statement when the jury had been given a limiting instruction about the challenged testimony. In finding no plain error in *Washington*, the court relied on the fact that an out-of-court statement attributed to an anonymous caller resulted in no prejudice because it was "wholly cumulative" to the defendant's confession and the victim's identification, it was received without objection, and it was subject to a limiting instruction. 260 S.W.3d at 881. In *Tripp*, the court found that the defendant demonstrated no manifest injustice resulting from the admission of an out-of-court statement attributed to the defendant's brother because it was not offered for its truth and a limiting instruction was given. 168 S.W.3d at 679. The court also noted that even if the jury disobeyed the limiting instruction and considered the statement for its truth, there was no prejudice as it equally supported the State's

theory of guilt and the defendant's alibi offered at trial. *Id.* Both cases illustrate the potential value of a limiting instruction, but neither holding supports that plain error necessarily results if a limiting instruction is not given.

5. Other than restating the prosecutor's reference in closing argument to Albright's testimony of Victim's statement, Defendant does not develop his contention that it could have permitted the jurors to consider the statement as substantive evidence that Defendant committed the crimes and that this reference resulted in manifest injustice. Generally, matters asserted in a point relied on but not developed in argument are deemed abandoned. *See State v. Edwards*, 280 S.W.3d 184, 190 (Mo.App. E.D.2009). Defendant concedes the admissibility of the testimony to explain how the investigation of Defendant started, as well as "the timing of the allegations," and he points to nothing in the State's closing argument that encouraged the jury to make an improper use of the testimony.

and was subject to cross-examination." *State v. Hamilton*, 892 S.W.2d 371, 378 (Mo.App. E.D.1995). "An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." *State v. Garth*, 352 S.W.3d 644, 656 (Mo.App. E.D.2011); *see also State v. Nettles*, 216 S.W.3d 162, 165–66 (Mo.App. S.D.2006).

■ Defendant's complaint is that the jury might have considered Albright's testimony for the truth of the matter—that Victim "was having sex with [Defendant]." But Victim, subject to cross-examination, told the jury that that is exactly what happened—that she was having sex with Defendant during the same period of time that she was having sex with Albright. Although the better practice would have been for the trial court to give a limiting instruction as requested by Defendant, Defendant has failed to convince us that the trial court's failure to do so constituted a manifest injustice under the circumstances present here. *See Shaffer*, 251 S.W.3d at 358.

Defendant's point is denied, and the judgment of the trial court is affirmed.

JEFFREY W. BATES, J., and DANIEL E. SCOTT, P.J., concur.